UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS (CHICAGO)
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>TEC-AIR, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 17-32273 (JSB) |

## INTERIM ORDER (A) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A AND FINAL HEARING, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[1] filed by the above-captioned debtor and debtor-in-possession (the "Debtor"), pursuant to sections 361 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the Northern District of Illinois (the "Local Rules"), for entry of (i) an interim order (this "Interim Order") (a) authorizing the Debtor to use cash collateral, (b) granting adequate protection, (c) scheduling a final hearing on the Motion (the "Final Hearing"), and (d) granting related relief, and (ii) a final order (the "Final Order") on substantially the same terms as the Interim Order; and an interim hearing on the Motion having been held on November 1, 2017 (the "Interim Hearing"); and upon the *Declaration of Robert J. McMurtry in Support of the Debtor's Chapter 11 Petition and First Day Motions* [Docket No. 10]; and the Debtor having stipulated and agreed that:

> i. Subject to Paragraph 10 of this Interim Order, as of the Petition Date, the Debtor is indebted to The Leaders Bank ("Leaders") in the amount of $5,463,793.53 (the "Leaders Prepetition Claim") pursuant to that certain Amended, Restated, and Consolidated Term Note dated May 28, 2015 and that certain Term Note dated April 26, 2016 (collectively, the "Leaders

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

35011.1 475710v7

Notes") and that certain Forbearance Agreement dated April 26, 2016, as modified by that certain First Modification to Forbearance Agreement dated June 30, 2017;

ii. Subject to Paragraph 10 of this Interim Order, the Debtor's obligations under the Leaders Notes are secured by all of the Debtor's rights, title and interest in and to all of the following assets whether then existing or thereafter arising: all inventory, equipment, accounts (including but not limited to all health-care insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles), all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media, and all support obligations relating to the foregoing property, all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property, and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property (collectively, the "Leaders Prepetition Collateral");

iii. Subject to Paragraph 10 of this Interim Order, the Debtor waives the right to challenge the validity, extent, priority, or perfection of Leaders' security interests, and liens and/or (b) the validity, allowability, priority, secured status or amount of the Leaders Prepetition Claim;

iv. Subject to Paragraph 10 of this Interim Order, as of the Petition Date, the Debtor is indebted to Byline Bank, as successor by merger to Ridgestone Bank ("Byline" and together with Leaders, the "Prepetition Lenders") in the amount of $2,250,281.48 pursuant to that certain Loan Agreement, that certain U.S. Small Business Administration Note and that certain U.S. Small Business Administration Security Agreement, each dated as of June 29, 2015. The Leaders Prepetition Claim shall be deemed an allowed claim; and

v. The Debtor will continue to operate its business in the ordinary course consistent with the terms of the Budget and shall provide authorized representatives of Leaders reasonable access to its books and records and other reporting functions;

35011.1 475710v7

and the Debtor having proposed the following adequate protection to Leaders:

    i.    Adequate protection payments in the form of (a) monthly payments of interest, reasonable fees and other amounts due under the Leaders Notes and (b) ongoing payment of Leaders' reasonable fees, costs and expenses, including, without limitation, legal and other professional fees and expenses;

    ii.    A superpriority administrative expense claim pursuant to sections 503(b) and 507(b) of the Bankruptcy Code equal to the diminution in the value of the Prepetition Collateral; and

    iii.    To the extent of any diminution in value of Leader's interest in the prepetition collateral from and after the Petition Date, Leaders be granted replacement liens as security for payment of the prepetition debt.

and the Debtor having proposed to provide Byline with replacement security interests and liens upon the PMSI Collateral solely to the extent of any diminution in the value of the PMSI Collateral from and after the Petition Date; and after due deliberation and good and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**[2]

A.    On October 27, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate and manage its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 Case.

B.    The United States Bankruptcy Court for the Northern District of Illinois (the "Court") has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is

---

[2] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of the Chapter 11 Case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C. The statutory and rule based predicates for the relief requested in the Motion are sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014 and Local Rule 4001-2.

D. Notice of the Motion having been given as set forth in the Motion is sufficient in light of the circumstances and the nature of the relief requested in the Motion and no other or further notice is necessary or required, except as otherwise set forth herein.

E. As of the date of the entry of this Interim Order, no official committee has been appointed in this chapter 11 case pursuant to section 1102 of the Bankruptcy Code.

F. The ability of the Debtor to finance its operations requires immediate access to cash derived from operating the businesses claimed as collateral by the Prepetition Lenders (as such term is defined in 11 U.S.C. § 363(a), the "Cash Collateral"), the absence of which would immediately and irreparably harm the Debtor, its estate, and its creditors. The ability to use the Cash Collateral will allow the Debtor to continue the operation of its business and administer and preserve the value of the estate for the benefit of creditors. All of the Debtor's cash, on hand and cash flow from the Debtor's operations consists of proceeds of prepetition accounts or inventory that are subject to the liens of the Prepetition Lenders. If the Debtor is not able to use Cash Collateral as provided herein it will be unable to fund payroll and other operating expenses that are necessary to maintain the value of the Debtor's estate and to enable the Debtor to maximize recoveries for all parties in interest.

G. The Cash Collateral constitutes property of the Debtor's estate.

35011.1 475710v7

H.   The Prepetition Lenders are entitled to receive adequate protection for any diminution in the value of their respective interests in the Prepetition Collateral resulting from (a) the use, sale, lease, or depreciation or other diminution in value of the Prepetition Collateral, or (b) as a result of the imposition of the automatic stay under section 362(a) of the Bankruptcy Code.

I.   The adequate protection set forth herein is sufficient to adequately protect the interest of Leaders against any diminution of value of its Cash Collateral and the Leaders Prepetition Collateral. The proposed adequate protection is fair and reasonable and sufficient to satisfy the requirements of sections 363(c)(2) and (e).

J.   The Debtor has requested the immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b) and (c). The entry of this Interim Order will minimize disruption of the Debtor's business and will preserve and maintain the assets of the Debtor's estate, will avoid immediate and irreparable harm to, and is in the best interest of, the Debtor, its creditors and its estate.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that:

1.   The Motion is granted as set forth herein.

2.   Any objections to the Motion with respect to entry of this Interim Order that have not been withdrawn, waived, or settled are hereby denied and overruled.

3.   The Debtor is hereby authorized to use Cash Collateral to pay the ordinary and reasonable expenses of operating its business in accordance the terms of this Interim Order and the budget attached hereto as Exhibit 1 (the "Budget") through the Final Hearing (defined below).

4. Subject to the Carve-Out (below defined), Leaders' prepetition liens shall have the same priority as existed prior to the Petition Date and the Leaders prepetition debt shall constitute the legal, valid and binding obligations of the Debtor in accordance with the Leaders Notes, and such obligations are enforceable in accordance with the terms of the Leaders Notes.

5. To the extent of any diminution in the value of the Leaders Prepetition Collateral, from and after the Petition Date, Leaders is hereby granted replacement security interests and liens upon all assets of the Debtor, excluding the PMSI Collateral (the "Leaders Bank Replacement Lien"). As additional adequate protection, the Debtor shall pay to Leaders (a) monthly payments of interest, reasonable fees and other amounts due under the Leaders Notes and (b) ongoing payment of Leaders' reasonable fees, costs and expenses, including, without limitation, legal and other professional fees and expenses;

6. To the extent of any diminution in the value of the PMSI Collateral, from and after the Petition Date, Byline is hereby granted replacement security interests and liens upon the PMSI Collateral (the "Byline Replacement Lien" and collectively with the Leaders Bank Replacement Lien hereinafter referred to as the "Replacement Liens").

7. Nothing herein shall be deemed to alter or affect any valid, prepetition security interests in or liens on the Debtor's assets held by any secured creditor other than the Prepetition Lenders. For the avoidance of doubt, the Replacement Liens shall have same priority as existed prior to the Petition Date.

8. Subject only to the Carve-Out (defined below), Leaders is hereby granted an allowed superpriority administrative expense claim in this chapter 11 case, as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code (the "Superpriority Claim"). The Superpriority Claim shall exclude avoidance actions of the Debtor's estate arising under

chapter 5 of the Bankruptcy Code and all proceeds thereof and shall not prime, alter or affect the priority of any valid, prepetition security interests in or liens on the Debtor's assets held by any secured creditor that were, as of the Petition Date, senior in priority to the liens of Leaders in the Leaders Prepetition Collateral.

9. As used in this Interim Order, the term "Carve-Out" shall mean the sum (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under 28 U.S.C § 1930(a); (ii) fees and expenses of up to $10,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) allowed and unpaid claims for unpaid fees, costs, and expenses in an amount not to exceed $270,000.00, of professionals retained by the Debtor or any statutory committee appointed in this chapter 11 case (a "Committee").

10. The stipulations and admissions contained in this Interim Order shall be binding on the Debtor in all circumstances and shall be binding on the Debtor's estate and any other party in interest, including, without limitation, any Committee, unless, and solely to the extent that (a) any such part in interest, including any Committee, with standing and requisite authority, has timely commenced an adversary proceeding seeking to challenge: (a) the validity, extent, priority, or perfection of the security interests, and liens of any of the Prepetition Lenders, or (b) the validity, allowability, priority, secured status or amount of the Debtor's obligations to the Prepetition Lenders (a "Challenge Proceeding") by no later than (i) 75 days after the entry of this Interim Order, for parties other than a Committee and (ii) 60 days after the date of formation of a Committee, if a Committee has been appointed (the "Challenge Period").

11. The Replacement Liens (a) are and shall be in addition to the Prepetition Liens; (b) are and shall be deemed properly perfected, valid and enforceable liens without any further action by the Debtor, Leaders or Byline and without the execution, filing or recordation of any

financing statements, security agreements, mortgages or other documents and instruments; and (c) shall remain in full force and effect notwithstanding any subsequent conversion to chapter 7 or dismissal of the case. Although not required, upon request by the Prepetition Lenders, the Debtor shall execute and deliver any and all UCC Financing Statements, UCC Continuation Statements, or other instruments or documents considered by the Prepetition Lenders to be reasonably necessary in order to perfect the Replacement Liens and proceeds granted by this Interim Order, and the Prepetition Lenders are authorized to receive, file and record the foregoing at its own expense, which actions shall not be deemed a violation of the automatic stay embodied in section 362 of the Bankruptcy Code.

12. In the event the Debtor defaults or violates this Interim Order, the Prepetition Lenders are entitled to request a hearing to terminate Debtor's use of cash collateral within two (2) days or as soon as practicable to be heard by the Court.

13. The Final Hearing will be held on December 14, 2017 at 10:00 a.m. (prevailing Central Time), or as soon thereafter as counsel may be heard, before the Honorable Janet S. Baer in Courtroom 615 in the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, at which time the Court will consider approval of the Final Order.

14. Objections to approval of the Final Order must be in writing, must conform to the Bankruptcy Rules and the Local Rules, must set forth the name of the objecting party, the basis for the objection and the specific grounds therefor, and shall be filed with the Bankruptcy Court and served on counsel to the Debtor, Cullen and Dykman LLP, Attn: S. Jason Teele, Esq. and Nicole Stefanelli, Esq., The Legal Center, One Riverfront Plaza, Newark, New Jersey 07102, so as to be received by 4:00 p.m. (ET) on the date that is two (2) days prior to the Final Hearing.

15. The Debtor is hereby directed to serve a copy of this Interim Order on (i) the Office of the United States Trustee for the Northern District of Illinois, (ii) the Prepetition Lenders or their counsel, if known, (iii) the Debtor's 20 largest unsecured creditors, and (iv) all parties who filed a notice of appearance pursuant to Bankruptcy Rule 2002, by first class mail within two (2) days of the entry of this Interim Order.

16. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof.

17. Notwithstanding the possible applicability of Bankruptcy Rule 6003 or 6004(h) or otherwise, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Interim Order.

18. The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Interim Order.

Dated: November 1, 2017
Chicago, Illinois

*Janet S. Baer*

THE HONORABLE JANET S. BAER
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1
### Budget

TEC-Air
Weekly Cash Flow

| Week | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** (Subject to +/- 10% Variance) | | | | | | | | | | | | | |
| Beginning Book Balance | ($51,558) | $137,866 | $124,934 | $33,454 | $250,361 | $102,946 | $71,171 | $85,536 | $142,461 | $46,046 | ($27,203) | $60,382 | $139,886 |
| Sales | $100,000 | $125,000 | $144,405 | $525,000 | $75,000 | $150,000 | $150,000 | $575,000 | $75,000 | $150,000 | $180,000 | $500,000 | $75,000 |
| DIP Financing | $350,000 | | | $150,000 | | | | | | | | | |
| **TOTAL RECEIPTS** | $398,442 | $262,866 | $269,339 | $708,454 | $325,361 | $252,946 | $221,171 | $660,536 | $217,461 | $196,046 | $152,797 | $560,382 | $214,886 |
| **OPERATING DISBURSEMENTS** (Subject to +/- 10% Variance) | | | | | | | | | | | | | |
| Credit Card Charges | $11,500 | | | | | | | | | | | | |
| Payroll and Related | $38,167 | $85,000 | $0 | $18,140 | $0 | $0 | $0 | $18,140 | $0 | $0 | $0 | $18,140 | |
| Equipment/IT | $1,369 | $0 | $36,000 | $89,645 | $36,000 | $85,000 | $36,000 | $89,645 | $36,000 | $85,000 | $36,000 | $89,645 | $36,000 |
| Insurance | $12,156 | $0 | $0 | $6,544 | $0 | $0 | $0 | $6,544 | $0 | $0 | $0 | $6,544 | |
| Rent | $0 | $0 | $0 | $58,969 | $55,000 | $0 | $0 | $58,969 | $0 | $0 | $0 | $58,969 | $36,000 |
| Utilities | $27,936 | $0 | $0 | $43,843 | $0 | $43,843 | $0 | $43,843 | $55,000 | $0 | $0 | $43,843 | $0 |
| Vendors | $169,448 | $52,932 | $0 | $28,590 | $0 | $0 | $0 | $28,590 | $0 | $0 | $0 | $28,590 | $55,000 |
| | | | | | | | | | | | | | $0 |
| **TOTAL OPERATING DISBURSEMENTS** | $260,576 | $137,932 | 195,885 | 172,861 | 56,415 | 52,932 | 99,635 | 258,344 | 56,415 | 63,249 | 56,415 | 161,264 | $0 |
| | | $137,932 | $235,885 | $418,593 | $147,415 | $181,775 | $135,635 | $504,576 | $147,415 | $148,249 | $92,415 | $406,996 | $91,000 |
| **RESTRUCTURING** | | | | | | | | | | | | | |
| Leaders Bank - Adequate Protection | | | | | | | | | | | | | |
| DIP Loan - Interest | | | | 26,000.00 | | | | | | | | | |
| Bankruptcy Counsel (Cullen & Dykman)* | | | | | 75,000 | | | 5,000.00 | 24,000 | | | 5,000.00 | 24,000.00 |
| US Trustee Fee | | | | | | | | | | 75,000 | | | 75,000 |
| Three Twenty-One Capital Partners | | | | 5,000 | | | | | | | | | 10,400 |
| Ordinary Course Professionals | | | | 8,590.00 | | | | 8,500.00 | | | | 8,500.00 | |
| **TOTAL RESTRUCTURING EXPENSES** | $0 | $0 | $0 | $39,590 | $75,000 | $0 | $0 | $13,500 | $24,000 | $75,000 | $0 | $13,500 | $109,400 |
| **TOTAL RESTRUCTURING** | $260,576 | $137,932 | $235,885 | $458,093 | $222,415 | $181,775 | $135,635 | $518,076 | $171,415 | $223,249 | $92,415 | $420,496 | $209,400 |
| **ENDING CASH** | $137,866 | $124,934 | $33,454 | $250,361 | $102,946 | $71,171 | $85,536 | $142,461 | $46,046 | ($27,203) | $60,382 | $139,886 | $14,486 |

* Fees are accrued until closing of sale transaction.