**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Tec-Air, Inc., | ) Case No. 17-32273 |
| | ) |
| Debtor. | ) Hon. Janet S. Baer |
| | ) Hearing Date: November 7, 2017 |
| | ) Hearing Time: 9:30 a.m. (CDT) |

**LIMITED INITIAL OBJECTION OF**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO**
**DEBTOR'S MOTION TO APPROVE BID PROCEDURES**

The Official Committee of Unsecured Creditors (the "Committee") for the above-captioned Debtor respectfully submits this initial limited objection (the "Limited Objection") to the Debtor's motion to approve bidding procedures for the sale of substantially all of the Debtor's assets [Docket No. 11] (the "Motion").[1] The Committee was just appointed on the afternoon of November 6th and has limited information with which to evaluate the Motion and proposed sale process. Accordingly, the Committee requests that the Motion be continued for approximately one week so the Committee can get up to speed. In the interim, the Committee files this Limited Objection to address its initial concerns regarding the Stalking Horse APA and the Debtor's proposed bidding procedures and sale process.

Specifically, and as discussed more fully below, the Committee objects to (i) the compressed timeline for the sale process, including the proposed December 1 Bid Deadline, in the absence of any apparent urgency; (ii) the proposed inclusion of all Avoidance Actions in the sale, as provided by the Stalking Horse APA; (iii) the requirement that Qualified Bids must be bulk bids for all of the Purchased Assets; (iv) the amount of the proposed Break-up Fee and

---

[1] Any capitalized terms not defined herein shall carry the meaning in the Motion.

{000 MSC A0490093.DOC 2}

Expense Reimbursement for the stalking horse bidder and its ability to credit these amounts in bidding at the Auction; (v) the amount of the Initial Minimum Overbid; and (vi) the certain aspects of the contract assumption and objection procedures.

## I.  BACKGROUND

1. The Debtor filed the Motion on October 27, 2017 – the same day that it filed a voluntary petition under chapter 11 of the Bankruptcy Code – and noticed the Motion for hearing on November 7, 2017.

2. On November 6, 2017, the United States Trustee formed the Committee, which is comprised of the following creditors: Quadrant Magnetics, LLC; Supply Chain Services International; Nexus Employment Solutions of Indiana, Inc.; Meany, Inc.; Asahi Kasei Plastics North America, Inc.; Donald J. Ulrich Associates, Inc.; and First Call Temporary Services, Inc.

3. Through the Motion, the Debtor seeks authority to sell substantially all of its assets, including all chapter 5 causes of action, through an expedited sale process.  The Debtor's proposed Stalking Horse APA includes a purchase price of $4,000,000, plus the assumption of Cure Costs and Supplier Obligations up to an aggregate amount of $600,000.  The Debtor has simultaneously disclosed in filings that its assets are secured by bank debt in excess of $7.5 million in the aggregate.  The continued employment of the Debtor's current owner and president (on terms and conditions that are not disclosed in the Motion) is one of the conditions of the Stalking Horse APA.

4. Absent a competitive bidding process that results in a significantly higher purchase price for the Debtor's assets and/or the preservation of Avoidance Actions for the bankruptcy estate, the outlook for unsecured creditors is bleak.  Through this Limited Objection, the Committee seeks to avoid a sale process that inures primarily to the benefit of the Debtor's

owner and secured creditors, and that does not maximize the value of the Debtor's assets for the benefit of unsecured creditors.

## II. INITIAL OBJECTIONS

### A. Bid Deadline and Related Dates

5. As indicated above, the Committee requests that the Court continue the Motion for approximately one week to allow time for the Committee to evaluate the Debtor's prepetition marketing efforts and the proposed timeline for the sale.

6. In any event, the Committee does not believe that the proposed December 1, 2017 Bid Deadline provides a sufficient opportunity to solicit higher and better bids. The Motion and the First Day Declaration provide no meaningful explanation of the prepetition marketing process that led to the Stalking Horse APA. Furthermore, the Motion is light on justification for such an expedited sale process. In paragraph 29 of the Motion, the Debtor states, in conclusory fashion, that the sale "must occur quickly to maximize value in this chapter 11 case and that extended time spent in chapter 11 increases the risk of business loss and value deterioration." (*Id*. at 29.) The Debtor further states, without explanation, that "[a]bsent a reasonably prompt sale pursuant to the procedures and timelines proposed, the Debtor believes that the going-concern value of the Purchased Assets will be significantly compromised." (*Id*.)

7. It seems unlikely that less than one month will be enough time for competing bidders to complete due diligence and submit bids, particularly considering the intervening Thanksgiving holiday weekend. If the Court does not continue the Motion as requested, then the deadline for Qualified Bids should, at a minimum, be extended for two weeks through and including December 15, 2017, with corresponding changes to the Auction and Sale Hearing dates.

8. While the Committee is mindful that the Stalking Horse APA imposes certain deadlines, there is no evidence that the Debtor's business is a "melting ice cube" such that an expedited sale process is warranted in this case. Moreover, the Court has authorized the Debtor's use of cash collateral and approved a 13-week budget that should fund the chapter 11 process long enough to provide for a reasonable sale process with adequate marketing time and opportunity for competitive bidding.

### B. Inclusion of Avoidance Actions in Purchased Assets

9. The Stalking Horse APA defines Purchased Assets to include Avoidance Actions (i.e., all chapter 5 causes of the action). The Committee has not had an opportunity to investigate the Avoidance Actions. While the Committee appreciates that a buyer might want to acquire certain potential avoidance actions against suppliers and customers, the inclusion of all Avoidance Actions in the Stalking Horse APA (particularly potential claims against the secured creditors and insiders) raises red flags and potentially deprives the unsecured creditors of a valuable source of recovery.

10. Accordingly, the Committee objects to the inclusion of all Avoidance Actions in the definition of Purchased Assets. At a minimum, the Court should preserve the Committee's right to object to the inclusion of Avoidance Actions in the Sale until the Committee has a reasonable opportunity to investigate.

### C. Qualified Bids

11. As currently written, a Qualified Bid must be a bulk bid to purchase all or substantially all of the Purchased Assets. In addition to considering bids that exclude some or all Avoidance Actions, the Committee would like to the definition of Qualified Bid to be modified to allow for the possibility of alternative forms of bidding on the Debtor's assets.

4

### D. Break-up Fee and Expense Reimbursement

12. The Committee objects to the amount of the Break-up Fee and Expense Reimbursement. The Debtor's proposed bid protections include a $150,000 Break-up Fee and Expense Reimbursement up to an additional $150,000. The Debtor purports to justify the 3.2% Break-up Fee as reasonable without acknowledging that the Break-up Fee combined with the Expense Reimbursement approaches 6.5% of the potential purchase price under the Stalking Horse APA, which is clearly unreasonable.

13. The Committee submits that the Court should allow a <u>maximum</u> of 3% for any break-up fee, and it should be based entirely on actual expenses incurred by the Stalking Horse. *See e.g.*, *In re Kirk Corp.*, No. 09-17236, 2009 WL 6769950, at *16 (Bankr. N.D. Ill. July 30, 2009) (approving a 2.5% break-up fee); *In re Women First Health Care, Inc.*, 332 B.R. 115, 118 (Bankr. D. Del. 2005) (noting the court had approved a break-up fee of $50,000 or 2.8% on the sale of assets worth $1.75 million); *In the Matter of Tiara Motorcoach Corp.*, 212 B.R. 133, 138 n.6 (Bankr. N.D. Ind. 1997) (a 10% break-up fee is much higher than the 1-2% fee found to be reasonable in the majority of cases approving such fees).

14. Furthermore, the Stalking Horse should not be able to credit bid any break-up fee or expense reimbursement amount at the Auction. The Debtor, in consultation with the Committee, can still take the Stalking Horse's break-up fee into account when considering competing bids at the Auction.

### E. Initial Minimum Overbid

15. The Debtor proposes an Initial Minimum Overbid that covers the $300,000 of proposed Break-up Fee and Expense Reimbursement, plus an additional $100,000. To ensure that bidding is not chilled by an excessive overbid requirement, the Initial Minimum Overbid

5

should be limited to the maximum 3% break-up fee/expense reimbursement described above, plus $50,000.

### F. Proposed Contract Cure Notice and Objection Procedures

16. The Debtor's proposed Contract Procedures provide for Cure Notices to be served by mail fifteen (15) days before the Sale Hearing and objections to be filed by Contract Parties at least seven (7) days before the Sale Hearing.

17. Based on the Debtor's proposed Sale Hearing date of December 6, the Debtor is clearly able to serve Cure Notices by November 21 and probably sooner. The Court should set a firm November 21 deadline for Cure Notices to be delivered (not mailed) to Contract Parties, maintain the Contract Objection Deadline at seven (7) days prior to the Sale Hearing, and further require the Debtor to file any replies to Contract Objections at least two (2) business days prior to the Sale Hearing. This revised schedule will provide a more reasonable opportunity for Contract Parties to protect their rights and for the Court to resolve any disputes prior to the Closing.

### III. CONCLUSION

18. At the first-day hearing, the Debtor's counsel indicated there is a likelihood of competing bids for the Debtor's assets. While the Committee is still reviewing the matter, the Committee's proposed modifications to the Debtor's proposed bidding procedures, as set forth herein, should provide a minimal platform to facilitate a more open and competitive bidding process, and provide additional flexibility to ensure that the value of the Debtor's assets is maximized and potential recoveries for unsecured creditors are preserved. Therefore, the Committee requests that the Court continue the Motion for approximately one week or, in the

6

{000 MSC A0490093.DOC 2}

alternative, sustain the Committee's objections, as set forth herein. The Committee reserves the right to file a supplemental objection once it has an opportunity to further review this matter.

Dated: November 6, 2017

Respectfully submitted,

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

By:   /s/ Gordon E. Gouveia
      One of its proposed attorneys

Ira Bodenstein (#31268579)
Gordon E. Gouveia (#6282986)
Shaw Fishman Glantz & Towbin LLC
321 N. Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151
*Proposed Counsel to the*
*Official Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

Gordon E. Gouveia, the undersigned attorney, hereby certifies that on November 6, 2017, he caused the foregoing **LIMITED OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION TO APPROVE BID PROCEDURES** to be served upon all parties requesting notice via the Court's CM/ECF noticing system and as otherwise indicated below.

/s/  Gordon E. Gouveia

# Mailing Information for Case 17-32273

### Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- David M Blaskovich    dave@lawdmb.com
- Timothy W Brink    tbrink@mpslaw.com, crampich@mpslaw.com
- Edmond M Burke    eburke@chuhak.com, mvasquez@chuhak.com
- Eugene S. Kraus    ekraus@skcounsel.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Terence G Tiu    ttiu@chuhak.com, mdominguez@chuhak.com
- Sheryl Toby    stoby@dykema.com
- Michael Traison    mtraison@cullenanddykman.com

**VIA EMAIL**
S. Jason Teele, Esq.
Nicole Stefanelli, Esq.
Cullen and Dykman LLP
steele@cullenanddykman.com
nstefanelli@cullenanddykman.com

**VIA U.S. MAIL**
Maria A Boelen
Meltzer, Purtill & Stelle LLC
300 South Wacker Drive
Suite 2300
Chicago, IL 60606

{000 MSC A0490093.DOC 2}