## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS (CHICAGO)
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>TEC-AIR, INC.,<br><br>          Debtor. | Chapter 11<br><br>Case No. 17-32273 (JSB) |

## NOTICE OF MOTION

     **PLEASE TAKE NOTICE** that on **November 29, 2017, at 10:00 a.m. (prevailing Central Time),** the above-captioned Debtor shall appear before the Honorable Janet S. Baer of the United States Bankruptcy Court for the Northern District of Illinois, or any other judge sitting in her place and stead, at Courtroom 615 in the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the *Debtor's Motion for Entry of Interim and Final Orders (A) Authorizing the Debtor to Obtain Post-Petition Financing, (B) Authorizing the Use of Cash Collateral, (C) Granting Adequate Protection, (D) Scheduling a Final Hearing and (E) Granting Related Relief*, a copy of which is hereby served upon you.

Dated:  November 21, 2017

Respectfully submitted,

**CULLEN AND DYKMAN LLP**

*/s/ Nicole Stefanelli*
S. Jason Teele, Esq.
Nicole Stefanelli, Esq.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 849-0220
Facsimile: (973) 849-2020
steele@cullenanddykman.com
nstefanelli@cullenanddykman.com

- and -

Michael H. Traison, Esq.
175 East Delaware Place
Suite 7011
Chicago, Illinois 60611
Telephone: (312) 860-4230
mtraison@cullenanddykman.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS (CHICAGO)**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TEC-AIR, INC., | Case No. 17-32273 (JSB) |
| Debtor. | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL**
**ORDERS (A) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION**
**FINANCING, (B) AUTHORIZING THE USE OF CASH COLLATERAL,**
**(C) GRANTING ADEQUATE PROTECTION, (D) SCHEDULING A**
**FINAL HEARING AND (E) GRANTING RELATED RELIEF**

Tec-Air, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor"), by
and through its proposed counsel, submits this motion (the "Motion") pursuant to sections 105,
361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of title 11 of the United States
Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of the United States
Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), for the entry of (i) an
interim order, substantially in the form submitted herewith (the "Interim Order") (a) authorizing
the Debtor to obtain post-petition financing and incur debt, in the aggregate principal amount of
$6,063,793.53 (the "DIP Loan"), pursuant to a post-petition credit agreement with The Leaders
Bank ("Leaders"), substantially in the form attached as Exhibit 1 to the Interim Order (the "DIP
Loan Agreement"), (b) authorizing the Debtor to use Cash Collateral (as defined below); (c)
granting adequate protection, (d) scheduling a final hearing on the Motion (the "Final Hearing")
and (e) granting related relief and (ii) a final order on substantially the same terms as the Interim

Order (the "<u>Final Order</u>" and together with the Interim Order, the "<u>Orders</u>").  In support of this

Motion, the Debtor respectfully represents as follows:

**JURISDICTION**

1.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     The statutory predicates for the relief sought herein are sections 105(a), 361, 362

and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014 and Local Rule 4001-

**BACKGROUND**

**A.     General Background**

3.     On October 27, 2017 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition

for relief pursuant to chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Case</u>").

4.     The Debtor continues to operate its business and manage its business as a debtor-

in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     No trustee or examiner has been appointed in this Chapter 11 Case.

6.     On November 6, 2017, the Office of the United States Trustee for the Northern

District of Illinois appointed an official committee of unsecured creditors (the "<u>Committee</u>")

pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 38].

7.     A more detailed factual background of the Debtor's business and operations, as

well as the events leading to the filing of this Chapter 11 Case, is set forth in the *Declaration of

Robert J. McMurtry in Support of the Debtor's Chapter 11 Petition and First Day Motions*

[Docket No. 10] (the "<u>First Day Declaration</u>").

**B.**    **The Leaders' Bank Secured Debt**

8.    As of the Petition Date, the Debtor was indebted to Leaders in the amount of $5,463,793.53 (the "Prepetition Leaders Claim") pursuant to that certain Amended, Restated, and Consolidated Term Note dated May 28 2015 and that certain Term Note dated April 26, 2016 (collectively, and together with all other agreements, documents, and instruments executed and/or delivered therewith, the "Leaders Notes"), and that certain Forbearance Agreement dated April 26, 2015, as modified pursuant to that certain First Modification to Forbearance Agreement dated June 30, 2017.  .

9.    To secure repayment of its obligations under the Leaders Notes, the Debtor granted Leaders a first-priority security interest in and liens on (the "Leaders Prepetition Liens") all of the Debtor's rights, title and interest in and to all of the following assets whether then existing or thereafter arising: all inventory, equipment, accounts (including but not limited to all health-care insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles), all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media, and all support obligations relating to the foregoing property, all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property, and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property (collectively, the "Leaders Prepetition Collateral").

C.    **Byline Bank SBA Loan**

10.    The Debtor is indebted to Byline Bank, as successor by merger to Ridgestone Bank ("Byline" and together with Leaders, the "Prepetition Lenders"), pursuant to that certain Loan Agreement, that certain U.S. Small Business Administration Note and that certain U.S. Small Business Administration Security Agreement, each dated as of June 29, 2015 (together, the "SBA Loan Agreement").    The SBA Loan Agreement provides for a purchase money security interest in favor of Byline in the following equipment (collectively, the "PMSI Collateral" and together with the Leaders Prepetition Collateral, the "Prepetition Collateral"):

- Chicago Electronic Robotics (laundry)
- Chicago Electronic Robotics (Zoneline)
- Nigata Molding Machine (385)
- Nigata Molding Machine (385)
- Nigata Molding machine (310)
- Nigata Molding Machine (310)
- 3 form machine
- Matsui Press Side Grinders (10)
- IQMS Warehouse Management System (WMS)
- IT Infrastructure/ Security

11.    In connection with the SBA Loan Agreement, the Debtor, Byline and Leaders entered into that certain Intercreditor and Subordination Agreement dated as of June 29, 2015, pursuant to which Leaders subordinated its interests in the PMSI Collateral to Byline.

12.    As of the Petition Date, the principal outstanding indebtedness owed to Byline under the SBA Loan Agreement was $2,250,281.48.    Pursuant to an agreement between the Debtor and Byline, the Debtor's obligations under the SBA Loan Agreement are currently deferred until December 1, 2017.

D.     **Prior Cash Collateral Order**

13.     On the Petition Date, the Debtor filed a motion seeking authorization to use the Prepetition Lenders' Cash Collateral.  On November 2, 2017, the Court entered the *Interim Order (A) Authorizing the Debtor to Use Cash Collateral (B) Granting Adequate Protection, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* [Docket No. 34] (the "Cash Collateral Order").  Because this Motion also seeks authorization to use the Prepetition Lenders' Cash Collateral, the Cash Collateral Order will be superseded by the entry of the Interim Order and will be of no further force and effect from and after entry of the Interim Order.

E.     **The Debtor's Need for Post-Petition Financing**

14.     The Debtor has examined its cash needs on a going forward basis and has determined that its ability to finance its operations requires immediate access to cash, the absence of which would immediately and irreparably harm the Debtor, its estate and its creditors. In addition to the use of Cash Collateral, as detailed herein, the Debtor requires the additional funds being provided through the DIP Loan in order to operate.  Without such funds, the Debtor would be forced to liquidate its assets for far less than the Debtor expects to receive through a sale of such assets as a going concern, to the detriment of all creditors.

15.     Prior to the Petition Date, the Debtor approached various lenders including Leaders and others in an effort to obtain financing.  Given the Debtor's current financial condition and financing arrangements, and the short-term nature of the DIP Loan, the Debtor was unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code. The Debtor was also unable to obtain secured credit from other sources: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not

otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is already subject to a lien.  As a result, financing on a post-petition basis was not otherwise available without granting Leaders the protections, rights and remedies afforded by the DIP Loan Agreement and the Orders.

16.    The Debtor has reasonably determined that the DIP Loan offered by Leaders provides favorable terms to the Debtor and its estate.  In the sound exercise of its business judgment and fiduciary duty, the Debtor has determined to proceed under the DIP Loan offered by Leaders, subject to the approval of the Court.

## **RELIEF REQUESTED**

17.    By this Motion, the Debtor seeks the (i) entry of the Interim Order (a) authorizing the Debtor to obtain the DIP Loan in the aggregate principal amount of $6,063,793.53 pursuant to the terms of this Motion, the DIP Loan Agreement and the Orders, limited in the interim as noted in the budget attached as Exhibit 2  to the Interim Order (the "Budget"), (b) authorizing the Debtor to use the cash derived from operating the business claimed as collateral by the Prepetition Lenders (as such term is defined in 11 U.S.C. § 363(a), the "Cash Collateral"), (c) granting adequate protection to the Prepetition Lenders, (d) scheduling the Final Hearing, and (d) granting related relief, and (ii) entry of the Final Order on substantially the same terms as the Interim Order.

18.    The Debtor will use the DIP Loan to fund its operations and to pay expenses identified in the Budget, including the Carve-Out (as defined below), for payment of the Leaders Prepetition Claim, and for adequate protection payments to Leaders.

## PROVISIONS THAT IMPLICATE LOCAL RULE 4001-2

19.     Local Rule 4001-2 requires that certain provisions contained in motions requesting authorization for debtor-in-possession financing be highlighted (the "Highlighted Provisions"). The following chart sets forth such Highlighted Provisions.

| Material Terms | Summary of Material Terms[1] | Interim Order Provision |
|---|---|---|
| **Borrower:** | Tec-Air, Inc. | Recitals |
| **Lender:** | The Leaders Bank | Recitals |
| **Interest Rate: [Bankr. R. 4001(c)(1)(B); Local Rule 4001-2(A)(3)]** | The greater of (a) the Prime Rate plus 4% or (b) 8% | Exhibit 1 |
| **Maximum Borrowing Available on a Final Basis: [Bankr. R. 4001(c)(1)(B); Local Rule 4001-2(A)(3)]** | $6,063,793.53 | Recitals |
| **Interim Borrowing Limit: [Bankr. R. 4001(c)(1)(B); Local Rule 4001-2(A)(3)]** | As set forth in the Budget | Exhibit 2 |
| **Borrowing Conditions: [Bankr. R. 4001(c)(1)(B); Local Rule 4001-2(A)(3)]** | As set forth in the Budget | Exhibit 2 |
| **Maturity Date: [Bankr. R. 4001(c)(1)(B); Local Rule 4001-2(A)(3)]** | The DIP Loan shall mature and become due and payable (the "Maturity Date") on the earliest of (i) the occurrence and continuation of an uncured Event of Default (as set forth in Section 7.01 of the DIP Loan Agreement and in paragraph 15 of the Interim Order), (ii) the closing date for a sale of substantially all of the Debtor's assets, or (iii) December 31, 2017, unless extended with the consent of Leaders. | Paragraph 4(d) |

---

[1]    Those capitalized but undefined terms in this chart shall have the meanings set forth either in this Motion, the proposed Interim Order, or the DIP Loan Agreement.

35011.1 496482v4

| Material Terms | Summary of Material Terms[1] | Interim Order Provision |
|---|---|---|
| **Events of Default:** <br> **[Bankr. R. 4001(c)(1)(B);** <br> **Local Rule 4001-2(A)(3)]** | The following shall constitute an event of default unless expressly waived in writing by Leaders (collectively, the "Events of Default"): (a) the occurrence of an "Event of Default" under the DIP Loan Agreement; (b) the failure of the Debtor to duly perform or observe any obligation, covenant or agreement on its part contained in the Interim Order and such failure continues unremedied for a period of five (5) business days after notice from Leaders to the Debtor of the existence of such failure, which notice shall be provided by email; (c) the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case to one under chapter 7, or the appointment of a trustee, receiver, interim receiver or receiver and manager in the Chapter 11 Case, or the appointment of an examiner with enlarged powers in the Chapter 11 Case; (d) any other superpriority administrative expense claim or lien shall be granted without the consent of Leaders; (e) the granting of relief from the automatic stay to permit foreclosure or the exercise of other remedies on the material assets of the Debtor having a value of more than $50,000; (f) other than payments authorized by the Bankruptcy Court in respect of "first day" or other orders entered upon motion of the Debtor, the Debtor shall make a payment (whether by way of adequate protection or otherwise) of principal or interest on account of any prepetition indebtedness; (g) an order shall be entered reversing, amending, supplementing, staying for a period of five days or more, vacating or otherwise modifying the Interim Order or the Final Order, or the Debtor shall apply for authority to do so, without the prior consent of Leaders, or the Interim Order or Final Order shall cease to be in full force and effect; (h) the filing of a Chapter 11 plan of reorganization by the Debtor without Leaders' prior consent; (i) a sale of substantially all of the Debtor's assets fails to close on or before December 15, 2017; or (j) entry of the Final Order does not occur by November 24, 2017. | Exhibit 1 |

| Material Terms | Summary of Material Terms[1] | Interim Order Provision |
|---|---|---|
| **Adequate Protection and Priority of Adequate Protection Liens and Claims: [Bankr. R. 4001(c)(1)(B)(i)]** | Replacement Liens.<br><br>(a)      Subject to the Challenge Period and the Carve-Out, as adequate protection for the DIP Loan and the use of its Cash Collateral, Leaders shall be and hereby is granted a replacement security interest and lien (the "Leaders Replacement Lien") upon all assets of the Debtor, whether now existing or hereafter acquired and the proceeds and products thereof, excluding the PMSI Collateral (collectively, the "Post-Petition Collateral").<br><br>(b)      Subject to the Challenge Period and the Carve-Out, as adequate protection for the use of its Cash Collateral, Byline shall be and hereby is granted replacement security interests and liens upon the PMSI Collateral, to the extent of any diminution in the value of the PMSI Collateral from and after the Petition Date (the "Byline Replacement Lien" and collectively with the Leaders Bank Replacement Lien, the "Replacement Liens").<br><br>(c)      The Replacement Liens shall exclude avoidance actions of the Debtor's estate arising under chapter 5 of the Bankruptcy Code and all proceeds thereof.   Nothing herein shall be deemed to alter or affect any valid, prepetition security interests in or liens on the Debtor's assets held by any secured creditor other than the Prepetition Lenders.  For the avoidance of doubt, the Replacement Liens shall have same priority as existed prior to the Petition Date.<br><br>Superpriority Claim as to Leaders.  Subject to the Challenge Period and the Carve-Out, Leaders is hereby granted an allowed superpriority administrative expense claim in this Chapter 11 Case, as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code (the "Superpriority Claim").  The Superpriority Claim shall exclude avoidance actions of the Debtor's estate arising under chapter 5 of the Bankruptcy | Paragraphs 5, 6, and 7 |

-10-

| Material Terms | Summary of Material Terms[1] | Interim Order Provision |
|---|---|---|
| | Code and all proceeds thereof, and shall not prime, alter or affect the priority of any valid, prepetition security interests in or liens on the Debtor's assets held by any secured creditor that were, as of the Petition Date, senior in priority to the Leaders Prepetition Liens.<br><br>Adequate Protection Payments to Leaders. The Debtor shall pay to Leaders (a) monthly payments of interest, reasonable fees and other amounts due under the DIP Loan, and (b) Leaders' reasonable fees, costs and expenses, including, without limitation, legal and other professional fees and expenses. | |
| **Stipulation Binding on the Debtor and Parties in Interest: [Bankr. R. 4001(c)(1)(B)(iii); Local Rule 4001-2(A)(2)(b)]** | The stipulations and admissions contained in the Interim Order, including the Debtor's Stipulations, shall be binding on the Debtor in all circumstances. The Debtor's Stipulations shall be binding on the Debtor's estate and every party in interest, including, without limitation, the Committee, unless, and solely to the extent that (a) any such party in interest, including the Committee, with standing and requisite authority, has timely commenced an adversary proceeding (subject to the limitations set forth below) against the Prepetition Lenders (i) in connection with any matter related to the Prepetition Loans or the Prepetition Collateral (a "Challenge Proceeding") by no later than 75 days after the entry of the Cash Collateral Order (the "Challenge Period") or (ii) any other claims or causes of action against the Prepetition Lenders. The Challenge Period may only be extended with the written consent of the Prepetition Lenders or by the order of the Court. If a Challenge Proceeding is timely commenced, the admissions and stipulations contained in the Interim Order, including the Debtor's Stipulations, shall nonetheless remain binding and preclusive (as provided in this paragraph) on the Debtor, the Committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged (pursuant to a final order) | Paragraph 16 |

| Material Terms | Summary of Material Terms[1] | Interim Order Provision |
|---|---|---|
| | in such Challenge Proceeding. Nothing in the Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, standing or authority or pursue any cause of action belonging to the Debtor or its estate, including, without limitation, claims and defenses with respect to the Prepetition Loans or the Prepetition Collateral. For the avoidance of doubt, any trustee appointed or elected in this Chapter 11 Case shall, until the expiration of the Challenge Period and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by acknowledgements, admissions, confirmations, stipulations and waivers of the Debtor in the Interim Order. | |
| **506(c) Waiver: [Bankr. R. 4001(c)(1)(B)(x); Local Rule 4001-2(A)(2)(c)]** | Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in this Chapter 11 Case at any time shall be charged against the Prepetition Lenders pursuant to sections 105 or 506(c) of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the Prepetition Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders. | Paragraph 13 |
| **Liens on Chapter 5 Causes of Action: [Bankr. R. 4001(b)(1)(B)(xi); Local Rule 4001-2(A)(2)(d)]** | The Superpriority Claim and Replacement Liens shall not extend to or attach to the proceeds of Avoidance Actions. | Paragraphs 5 & 6 |
| **Carve-Out and Committee Investigation Budget: [Local Rule** | The "Carve Out" is equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a); | Paragraph 8 |

35011.1 496482v4

| Material Terms | Summary of Material Terms[1] | Interim Order Provision |
|---|---|---|
| 4001-2(A)(2)(f)] | (ii) fees and expense of up to $10,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) allowed and unpaid claims for unpaid fees, costs, and expenses of professionals retained by the Debtor or the Committee in an amount not to exceed $300,000,[2] as set forth in the Budget. | |
| **Use of DIP Loan for Payment of Prepetition Debt: [Bankr. R. 4001(c)(1)(B)(ii); Local Rule 4001-2(A)(2)(e)]** | Upon the entry of the Final Order, the DIP Loan shall be used, in part, to pay the Leaders Prepetition Claim. | Paragraph 4(c) |
| **Waiver/Modification of Automatic Stay: [Bankr. R. 4001(c)(1)(B)(iv); Local Rule 4001-2(A)(2)(i)]** | The automatic stay of section 362 of the Bankruptcy Code is modified so that seven (7) days after notice of an event of continuing default Leaders shall be entitled to exercise all rights and remedies against the Post-Petition Collateral in accordance with the DIP Loan Agreement and this Interim Order and shall be permitted to satisfy the DIP Loan. | Paragraph 14(b) |
| **Adequacy of Budget: [Local Rule 4001-2(A)(4)]** | The Debtor has reason to believe that the Budget will be adequate (inclusive of professional fees and disbursements) considering all available assets, to pay all administrative expenses due and accruing during the period covered by the Budget. | Exhibit 2 |

## BASIS FOR RELIEF

**A.    Entry into the DIP Loan Agreement Is an Exercise of the Debtor's Sound Business Judgment.**

20.    Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances.  Provided that an agreement to obtain secured credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy

---

[2]    The final amount of the Carve-Out is still being negotiated among the parties.

Code, courts grant a debtor considerable deference in acting in accordance with its sound business judgment in obtaining such credit. *See, e.g., Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.),* 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving post-petition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment."); *In re Barbara K. Enters., Inc.,* Case No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not `leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest."); *In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[c]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."); *In re Farmland Indus., Inc.,* 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of post-petition financing requires, inter alia, an exercise of "sound and reasonable business judgment."); *see also Bray v. Shenandoah Fed. Sav. & Loan Assoc. (In re Snowshoe Co.),* 789 F.2d 1085, 1088 (4th Cir. 1986) (stating that "[t]he statute imposes no duty to seek from every possible lender before concluding that such credit is unavailable").

21.      Specifically, to determine whether the business judgment standard is met, a court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.,* 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.,* 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business

-14-

judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's]

authority under the [Bankruptcy] Code.") (citation omitted).  A debtor-in-possession "has the

discretionary authority to exercise his business judgment in operating the debtor's business

similar to the discretionary authority exercise business judgment given to an officer or director of

a corporation." *In re Commercial Mortg. and Finance Co.*, 414 B.R. 389, 394 (Bankr. N.D. 111.

2009) (quoting *State of Ill. Dept. of Revenue v. Schechter*, 195 B.R. 380, 384 (N.D. 111. 1996)).

22.    Moreover, where few lenders likely can or will extend the necessary credit to a

debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an

exhaustive search for financing." *In re Sky Valley, Inc.,* 100 B.R. 107, 113 (Bankr. N.D. Ga.

1988), *aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc.,* 99 B.R. 117, 120 n.4 (N.D. Ga.

1989); *see also In re Garland Corp.,* 6 B.R. 456, 461 (B.A.P. lst Cir. 1980) (secured credit under

section 364(c)(2) authorized, after notice and a hearing, upon showing that unsecured credit

unobtainable); *In re Stanley Hotel, Inc.,* 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's

finding that two national banks refused to grant unsecured loans was sufficient to support

conclusion that section 364 requirement was met); *Ames,* 115 B.R**.** at 37-39 (debtor must show

that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

23.    The Debtor's execution of the DIP Credit Agreement is an exercise of its sound

business judgment that warrants approval by the Court.  The Debtor and its advisors have

undertaken an analysis of the Debtor's projected financing needs during the pendency of this

Chapter 11 Case.  Based on such analysis, the Debtor determined that it could not survive solely

on Cash Collateral.  The Debtor anticipates that it will need up to $600,000 in post-petition

financing to support its operational and restructuring activities.  Accordingly, the Debtor began

negotiating Leaders regarding the terms of post-petition financing.  After a series of good faith,

35011.1 496482v4

arm's-length negotiations, the Debtor and Leaders agreed to the material terms of the DIP Loan Agreement and the Interim Order.  Based on the advice of its professionals, the Debtor has determined in its sound business judgment that the terms of the DIP Loan provides a greater amount of financing on more favorable terms than any other reasonably available alternative. The Debtor's advisors assisted the Debtor in ascertaining whether alternative debtor-in-possession financing is available and have assisted the Debtor in negotiations to obtain the best terms available.

24.     Specifically, the DIP Loan will provide the Debtor with immediate and ongoing access to borrowing availability to pay its current and ongoing operating expenses, including wages, salaries, rent, utilities and vendor payments, as well as restructuring related expenses. As demonstrated by the Budget, without the DIP Loan, the Debtor does not have sufficient cash flow to pay for its operations.  Unless these expenses are paid, the Debtor will be forced to cease operations, which would result in irreparable harm to the value of its assets, which it seeks to sell under section 363 of the Bankruptcy Code.  The DIP Loan therefore represents the best chance of survival for the Debtor in order to effectuate the sale, and should be authorized as being a proper exercise of the Debtor's business judgment.

**B.      The Debtor Should Be Authorized to Obtain Post-Petition Financing on a Superpriority Basis.**

25.     Section 364 of the Bankruptcy Code authorizes a debtor to obtain, in certain circumstances, post-petition financing on a secured or superpriority basis, or both.  Specifically, section 364(c) of the Bankruptcy Code provides, in pertinent part, that the court, after notice and a hearing, may authorize a debtor that is unable to obtain credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code to obtain credit or incur debt:

-16-

(1)    with priority over any or all administrative expenses of the
kind specified in section 503(b) or 507(b) of [the Bankruptcy
Code];

(2)    secured by a lien on property of the estate that is not
otherwise subject to a lien; or

(3)    secured by a junior lien on property of the estate that is
subject to a lien.

11 U.S.C. § 364(c).

26.    To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor

need only demonstrate "by a good faith effort that credit was not available" to the debtor on an

unsecured or administrative expense basis. *Bray v. Shenandoah Fed. Sa'ʸs. & Loan Ass 'n (In re

Snowshoe Co.),* 789 F.2d 1085, 1088 (4th Cir. 1986).   "The statute imposes no duty to seek

credit from every possible lender before concluding that such credit is unavailable."   *Id.; see also

Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.,* 266 B.R. 575, 584 (S.D.N.Y. 2001)

(superpriority administrative expenses authorized where debtor could not obtain credit as an

administrative expense).   When few lenders are likely to be able and willing to extend the

necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to

conduct such an exhaustive search for financing."   *In re Sky Valley, Inc.,* 100 B.R. 107, 113

(Bankr. N.D. Ga. 1988), *aff'd sub nom., Anchor Savs. Bank FSB v. Sky Valley, Inc.,* 99 B.R. 117,

120 n. 4 (N.D. Ga. 1989); *see also Ames Dep't Stores,* 115 B.R. at 40 (approving financing

facility and holding that the debtor made reasonable efforts to satisfy the standards of section

364(c) where it approached four lending institutions, was rejected by two, and selected the most

favorable of the two offers it received).

27.    Pursuant to section 364(c)(1) of the Bankruptcy Code, the Debtor's obligations

under the DIP Loan will be afforded superpriority administrative status   in accordance with

section 507(b) of the Bankruptcy Code, which Superpriority Claim will not attach to avoidance

actions of the Debtor's estate arising under Chapter 5 of the Bankruptcy Code and all proceeds

thereof.    No lender was willing to provide financing to the Debtor on an unsecured,

administrative claim basis or on a secured non-priming basis.    Given the Debtor's financial

position, and the short-term nature of the DIP Loan, the Debtor determined that a more

exhaustive search would be futile, and that the DIP Loan requested herein is in the best interests

of its estate.    Accordingly, the DIP Loan, including the Superpriority Claim, should be approved.

**C.    <u>The DIP Loan Terms are Fair and Reasonable</u>.**

28.    In determining whether the terms of post-petition financing are fair and

reasonable, courts consider the relative circumstances of both the debtor and the potential lender.

*In re Farmland Indus., Inc.* 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003).    As set forth above, the

Debtor has a significant need for additional liquidity, and Leaders is the only entity willing to

provide that assistance.

29.    The terms of the DIP Loan are not so onerous as to be found to benefit Leaders to

the exclusion of other creditors.    Rather, the terms of the DIP Loan are standard and customary.

In addition, all of the Highlighted Provisions are appropriate and warranted, even in the Interim

Order.    While the Debtor is agreeing to certain stipulations with respect to Leaders, those

stipulations do not bind the estate if parties in interest successfully adjudicate a challenge to such

provisions within the time frames mandated by the Local Rules.    The adequate protection being

granted to Leaders is also appropriate and standard.    Leaders is being granted Replacement Liens

and a Superpriority Claim, but no such liens and claims will attach to or be paid from the

proceeds of avoidance actions under Chapter 5 of the Bankruptcy Code, and the Replacement

Liens exclude the PSMI Collateral.    As additional adequate protection, the Debtor will pay to

Leaders (a) monthly payments of interest, reasonable fees and other amounts due under the DIP

Loan, and (b) Leaders' reasonable fees, costs and expenses, including, without limitation, legal

and other professional fees and expenses.  Leaders has agreed to a Carve-Out which does not

discriminate against professionals and which does not limit the Committee's use of same.

30.      For the foregoing reasons, the Debtor submits that the Highlighted Provisions are

a reasonable exercise of the Debtor's business judgment and appropriate under the circumstances

of this case, and that the Highlighted Provisions should be permitted in the Interim Order,

notwithstanding Local Rule 4001-2 (B).

**D.**      **The Payment of Prepetition Debt is Appropriate Under the Circumstances.**

31.      The DIP Loan, including the repayment of the Leaders Prepetition Claim, is the

Debtor's best available financing options for a variety of reasons.  First, the availability under the

DIP Loan under the DIP Loan Agreement provide the Debtor with the necessary liquidity and

time to conduct and conclude the sale process for substantially all of its assets.  Second, the

terms of the DIP Loan Agreement are competitive and substantially less costly than alternative

post-petition financing.  Third, obtaining the DIP Loan from Leaders allows the Debtor to avoid

a costly priming dispute that could disrupt the Debtor's efforts in this Chapter 11 Case which

would ultimately be far more costly for all parties-in-interest.  Finally, no parties-in-interest will

be prejudiced by the repayment of the Leaders Prepetition Claim because the Committee will

have the opportunity to review and challenge the Leaders Prepetition Claim, as set forth in the

Interim Order and mandated by the Local Rules.

32.      Courts have permitted debtors to use post-petition financing to pay prepetition

claims of a lender where, as here, the loan cannot be obtained on any other basis and the claims

of Leaders are fully secured.  As has been recently observed:

> [P]repetition secured claims can be paid off through a "roll-up."
> Most simply, a [roll up] is the payment of a pre-petition debt with
> the proceeds of a post-petition loan. Roll-ups most commonly
> arise where a pre-petition secured creditor is also providing a
> postpetition DIP loan under section 364(c) and/or (d) of the
> Bankruptcy Code. The proceeds of the DIP loan are used to pay
> off or replace the pre-petition debt, resulting in a post-petition debt
> equal to the pre-petition debt plus any new money being lent to the
> debtor. As a result, the entirety of the prepetition and post-petition
> debt enjoys the post-petition protection of section 364(c) and/or (d)
> as well as the terms of the DIP order. In both a refinancing and a
> rollup, the pre-petition secured claim is paid through the issuance
> of new debt rather than from unencumbered cash.

*Del. Trust Co. v. Energy Future Intermediate Holdings, LLC (In re Energy Future Holding Corp.)*, 527 B.R. 157, 167 (Bankr. D. Del. 2015) (quoting *In re Capmark Fin. Grp., Inc.*, 438 B.R. 471, 511 (Bankr. D. Del. 2010)).

33.    Recently, a court has approved the repayment of prepetition debt pursuant to an interim order at a first-day hearing where, as here, the post-petition lender was also the debtor's prepetition lender having a blanket first priority security interest in all of the debtor' assets. *See In re Pacific Sunwear of California. Inc.*, Case No. 16-10882 (LSS) (Bankr. D. Del Apr. 7, 2016) (noting that the debtor's prepetition lender, Wells Fargo, was also the entity proving the post-petition DIP Financing and had a first priority lien on all of the debtor's assets. As such, Judge Silverstein stated that she didn't "see the harm in letting [the roll-up of prepetition obligations] go out on the first day.") .

34.    In light of the Debtor's inability to find post-petition financing on more favorable terms, the fact that Leaders holds a first priority lien on the Debtor's assets, and the various benefits afforded to all parties in interest by the Debtor's entry into the DIP Loan Agreement, as described above, the Debtor submits that the repayment of the Leaders Prepetition Claim is appropriate and should be approved.

### E.   Leaders Should Be Deemed a Good Faith Lender Under Section 364(e) of the Bankruptcy Code.

35.     Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor and its right in any lien securing those loans, even if the authority of the debtor to obtain such loan or grant such lien is later reversed or modified on appeal.  Specifically, section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section [354 of the Bankruptcy Code] to obtain credit or incurred debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt or the granting of such priority or lien were stayed pending appeal.

11 U.S.C. § 364(e).

36.     The DIP Loan Agreement is the result of the Debtor's reasonable and informed determination that Leaders offered favorable terms on which to obtain needed post-petition funding, and of extended arm's length good faith negotiations between the Debtor and Leaders. The terms and conditions of the DIP Loan Agreement are fair and reasonable and the proceeds under the DIP Loan will only be used for purposes that are permissible under the Bankruptcy Code.  Accordingly, the Court should find that Leaders is a good faith lender within the meaning of section 364(e) of the Bankruptcy Code and is entitled to the protections afforded by that section.

### F.   The Debtor's Request to Use Cash Collateral Should be Approved.

37.     Pursuant to Bankruptcy Code section 363(c)(2), a debtor may use cash collateral if each entity that has an interest in such cash collateral consents, or if the Court, after notice and a hearing, authorizes the use of cash collateral. 11 U.S.C. § 363(c)(2). Section 363(e), in turn,

requires the Court to condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party upon that party's request. 11 U.S.C. § 363(e) ("[T]he court, with or without hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest.").

38.     The means by which adequate protection is provided are specified in section 361 of the Bankruptcy Code. Adequate protection may include, but is not limited to "periodic cash payments" to the extent that such use "results in a decrease in value of such entity's interest in such property" and "granting such other relief…, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

39.     What constitutes adequate protection is determined on a case-by-case basis, and courts have broad flexibility under Bankruptcy Code section 361 in determining what constitutes adequate protection. *See, e.g., In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987); *In re Green*, 436 B.R. 91, 94 (Bankr. S.D. Ill. 2010) ("[W]hether a particular secured creditor is adequately protected is a determination to be made on a case-by-case basis and is within the discretion of the court.").

40.     Indeed, section 361 of the Bankruptcy Code merely specifies the means by which adequate protection may be provided. "It does not require the court to provide it. To do so would place the court in an administrative role. Instead, the trustee or debtor in possession will provide or propose a protection method. If the party that is affected by the proposed action objects, the court will determine whether the protection provided is adequate. The purpose of this section is to illustrate means by which it may be provided and to define the contours of the concept." H.R. Rep. No. 95-595, at 338, 95th Cong., 1st Sess. (1977).

41.     The principal purpose of adequate protection is to ensure that the secured creditor receives the value for which it bargained prior to a debtor's bankruptcy filing. *In re Older Prairie Block Owner, LLC*, 448 B.R. 482, 493 (Bankr. N.D. Ill. 2011); *see also In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994) ("[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (quoting *MBank Dallas N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180 (Bankr. D. Del. 1993) (noting that all forms of adequate protection are designed to protect secured creditors from diminution in the value of their collateral); *accord In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006) ("The purpose of adequate protection is to assure that the lender's economic position is not worsened because of the bankruptcy case."); *In re Hollins*, 185 B.R. 523, 528 (Bankr. N.D. Tex. 1995) ("Adequate protection seeks to protect a creditor from an [sic] decline in the value of its collateral . . . .").

42.     Determination of whether a creditor's interests in property are adequately protected requires a pragmatic analysis and balance of all relevant factors particular to the case at bar. *In re Spencer*, 531 B.R. 208, 214 (Bankr. W.D. Wisc. 2015) (quoting *In re Rogers*, 239 B.R. 883, 887 (Bankr. E.D. Tex. 1999)).  Such factors include "the value of the collateral, whether the collateral is likely to depreciate over time, the debtor's prospects of a successful reorganization . . . the balancing of hardships between the parties and whether the creditor's property interest is being unduly jeopardized." *Spencer*, 531 B.R. at 2014 (quoting *Rogers*, 239 B.R. at 887).

43.     Pursuant to section 361 of the Bankruptcy Code, a debtor may provide adequate protection by making a cash or periodic payment to the creditor or providing it with the

replacement lien.  The creditor is only entitled to protection of the value of its collateral supporting its secured claim during the pendency of the bankruptcy case; it is not entitled to adequate protection for lost opportunity costs.  *See Fed. Nat. Mortg. Ass'n v. Dacon Bolingbrook Associates Ltd. P'Ship*, 153 B.R. 204, 210 (N.D. Ill. 1993); *see also In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584-85 (Bankr. D. Colo. 1995) (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988)).

44.    As adequate protection for the use of Leaders' Cash Collateral, the Debtor will grant to Leaders the Leaders Replacement Lien and the Superpriority Claim.  As additional adequate protection, the Debtor will pay to Leaders (a) monthly payments of interest, reasonable fees and other amounts due under the DIP Loan, and (b) Leaders' reasonable fees, costs and expenses, including, without limitation, legal and other professional fees and expenses.

45.    As adequate protection for the use of Byline's Cash Collateral, the Debtor will grant to Byline the Byline Replacement Lien.

46.    The Debtor submits that the foregoing adequately protects the Prepetition Lenders in a manner consistent with the requirements of the Bankruptcy Code.  Accordingly, the Debtor's use of Cash Collateral should be approved.

## G.    The Automatic Stay Should Be Modified on a Limited Basis

47.    The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to:  (i) grant the liens described above with respect to Leaders and to perform such acts as may be requested to assure such priority status and afford Leaders rights upon the termination of the DIP Loan Agreement; (ii) execute such other documents as may be required to effectuate the financing and (iii) implement the terms of the proposed Orders.

35011.1 496482v4

48.     Stay modifications of this kind are ordinary features of post-petition financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances.

**H.      The Debtor's Request for Entry of an Interim Order Should Be Approved**

49.     Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to obtain credit or use cash collateral may not be commenced earlier than fourteen (14) days after service of such motion.  The court, however, is authorized to conduct an expedited hearing prior to the expiration of such 14-day period and to authorize the obtaining of credit or use of cash collateral where, as here, such relief is necessary to avoid immediate and irreparable harm to a debtor's estate.

50.     The Debtor's ability to continue to finance its operations and the availability of sufficient working capital and liquidity is vital to the confidence of the Debtor's employees, suppliers, and customers and to the preservation and maintenance of the going-concern value and other values of the Debtor's estate.  As set forth herein, the Debtor requires immediate access to the DIP Loan in order to meet its liquidity needs in connection with this Chapter 11 Case.  The failure to obtain approval of the proposed financing on an expedited basis would no doubt lead to immediate and irreparable harm to the Debtor's estates.   Accordingly, the Debtor seeks immediate entry of the Interim Order to prevent immediate and irreparable harm to the Debtor's estate pending the Final Hearing pursuant to Bankruptcy Rule 4001(b).

**REQUEST FOR FINAL HEARING**

51.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable, but in no event later than thirty (30) days following the entry of the Interim Order, and fix the time and date prior to the Final Hearing for parties to file objections to the Motion.

35011.1 496482v4

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

52.    To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### NOTICE

53.    No trustee or examiner has been appointed in this Chapter 11 Case.  Notice of this Application has been provided to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) counsel to the Committee; (c) counsel to the Prepetition Lenders; and (d) all parties that have filed a request for notice pursuant to Bankruptcy Rule 2002.  Notice of this Application and any order entered hereon will be served in accordance with Local Rule 9013-1(D).  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

### NO PRIOR REQUEST

54.    No prior application or motion for the relief requested herein has been made by the Debtor to this or any other Court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

35011.1 496482v4

**WHEREFORE,** the Debtor respectfully requests that this Court (i) enter the Interim Order, substantially in the form submitted herewith, (ii) schedule the Final Hearing to consider entry of the Final Order, and (iii) grant the Debtor such other and further relief as the Court may deem just and proper.

Dated: November 21, 2017                              Respectfully submitted,

                                                      **CULLEN AND DYKMAN LLP**

                                                      /s/ *Nicole Stefanelli*
                                                      S. Jason Teele, Esq.
                                                      Nicole Stefanelli, Esq.
                                                      The Legal Center
                                                      One Riverfront Plaza
                                                      Newark, New Jersey 07102
                                                      Telephone: (973) 849-0220
                                                      Facsimile: (973) 849-2020
                                                      steele@cullenanddykman.com
                                                      nstefanelli@cullenanddykman.com

                                                      - and -

                                                      Michael H. Traison, Esq.
                                                      175 East Delaware Place
                                                      Suite 7011
                                                      Chicago, Illinois 60611
                                                      Telephone: (312) 860-4230
                                                      mtraison@cullenanddykman.com

                                                      *Proposed Counsel to the Debtor and*
                                                      *Debtor-in-Possession*

35011.1 496482v4