**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| Tec-Air, Inc., | ) Case No. 17-32273 |
|  | ) |
| Debtor. | ) Hon. Janet S. Baer |
|  | ) Hearing Date: December 14, 2017 |
|  | ) Hearing Time: 9:30 a.m. (CDT) |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED OBJECTION
AND RESERVATION OF RIGHTS TO DEBTOR'S MOTION FOR
APPROVAL OF SALE AND ENTRY OF SALE ORDER**

The Official Committee of Unsecured Creditors (the "Committee") of Tec-Air, Inc. (the "Debtor"), by and through its undersigned counsel, hereby submits this limited objection and reservation of rights (the "Limited Objection") to the proposed sale of substantially all of the Debtor's assets pursuant to the *Debtor's Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtor's Assets; (B) Approving Stalking Horse Bid Protections; (C) Scheduling an Auction and Sale Hearing; (D) Approving the Form and Manner of Notice of Sale, Auction, and Sale Hearing; (E) Establishing Notice and Contract Procedures for the Assumption and Assignment of Assumed Contracts and Assumed Leases; and (F) Granting Related Relief; and (II)(A) Authorizing and Approving the Sale Free and Clear of Liens, Claims, Interests, and Encumbrances; (B) Authorizing the Assumption and Assignment of Executory Contracts and Leases; and (C) Granting Related Relief* [Doc. 11] (the "Motion").[1] In support of this Limited Objection, the Committee respectfully states as follows:

---

[1] Any capitalized terms not defined herein shall carry the meaning in the Motion.

**INTRODUCTION**

1. The Committee supports a sale of the Debtor's assets that maximizes recoveries for creditors. As currently structured, however, the proposed sale encompasses all avoidance actions, including potentially valuable claims against the Debtor's prepetition lenders and insiders, without any allocation of the purchase price to the bankruptcy estate. In addition, based on the Debtor's substantial alleged secured debt and limited postpetition financing, unless the auction results in substantial overbidding in comparison to the stalking horse bid, the sale is unlikely to generate enough proceeds to pay all of the alleged secured debt and leave sufficient funds to complete the administration of the Debtor's chapter 11 case.

2. In short, the Court should not approve the proposed sale unless avoidance actions are excluded or fair consideration is paid and allocated to the estate for such claims. In addition, adequate funding must be left with the bankruptcy estate following the sale to fully administer and conclude this chapter 11 case.

**BACKGROUND**

3. On November 17, 2017, the Court entered the Bidding Procedures Order approving the Stalking Horse APA, through which the Debtor proposes to sell substantially all of its assets, including all chapter 5 causes of action,[2] to Chatterjee Management Company for $4,000,000, plus the assumption of Cure Costs and Supplier Obligations up to an aggregate amount of $600,000, all subject to higher and better offers. [Doc. 63] In connection with the Stalking Horse APA, the Debtor's sole shareholder, Robert J. McMurtry ("McMurtry") is expected to enter into an employment agreement, the terms of which have not been disclosed.

---

[2] The Stalking Horse APA does not indicate whether any purchased avoidance actions will be waived or pursued by the purchaser.

4.     The Bidding Procedures Order expressly reserves the Committee's "rights with respect to the substantive terms and conditions of the Stalking Horse APA, including, without limitation, the inclusion of all Avoidance Actions within the definition of the Purchased Assets as part of the Sale." *Id*. at ¶ 3.

5.     On November 28, 2017, the Debtor filed its Schedules and Statement of Financial Affairs. [Docs. 81, 83]

6.     The Debtor's Schedule A/B lists property valued at $3.226 million, not including substantial office furniture, equipment, intellectual property and goodwill of "unknown" value, and a $1,179,927 note receivable owed by McMurtry (the "McMurtry Note").

7.     In Schedule D, the Debtor lists The Leaders Bank ("Leaders") as a secured creditor with a claim in the amount of $5,463,793.53 as of the Petition Date and a security interest in "all assets subject to subordination agreement." *Id*. The Debtor further identifies Byline Bank ("Byline" and together with Leaders, the "Prepetition Lenders") as the holder of a secured claim in the amount of $2,250,281.48 as of the Petition Date, and has indicated in other filings that Leaders subordinated its interests in certain PMSI Collateral to Byline pursuant to an Intercreditor and Subordination Agreement dated as of June 29, 2015.[3]

8.     Schedule H reflects that the Debtor's obligations to the Prepetition Lenders are personally guaranteed by McMurtry.

9.     In Schedule F, the Debtor lists $3,274,935.16 of nonpriority unsecured claims.

10.    In its Statement of Financial Affairs, Part 2, Question 4 ("payments or other transfers of property made within 1 year before filing this case that benefited any insider"), the

---

[3] The Committee reserves all of its rights to investigate the extent, validity, priority, perfection, and enforceability of the Prepetition Lenders' liens and security interests and other potential causes of action against the Prepetition Lenders. Nothing in this Objection should be construed as a waiver of such reservation by the Committee.

{12353-001 OBJ A0492723.DOC 2}

Debtor has identified: (i) several payments to McMurtry totaling $80,540 for supposed advance reimbursements and shareholder distributions; (ii) three payments to Jennifer McMurtry totaling $59,000 for "reimbursement for advance to Tec Air to process payroll"; and (iii) a series of transfers totaling $112,553.55 to McMurtry's son-in-law for alleged expense reimbursement.

11. In response to Statement of Financial Affairs Part 2, Question 3 ("Certain payments or transfers to creditors within 90 days"), the Debtor identified a substantial number of payments exceeding $1.7 million dollars to creditors, including the Prepetition Lenders, former shareholder Rikki Swin and other entities, all of which transactions remain subject to further investigation by the Committee.

12. On November 30, 2017, the Court entered the *Interim Order (A) Authorizing the Debtor to Obtain Post-Petition Financing, (B) Authorizing the Use of Cash Collateral, (C) Granting Adequate Protection, (D) Scheduling a Final Hearing and (E) Granting Related Relief* [Doc. 95] (the "Interim DIP Order").

13. Under the Interim DIP Order, all chapter 5 avoidance actions and commercial tort claims are expressly excluded from the Prepetition Lender's replacement liens and Leaders' proposed superpriority claim. Furthermore, the Committee's Challenge Period to commence adversary proceedings against the Prepetition Lenders with respect to the Debtor's prepetition loans, including potential avoidance actions, extends through January 16, 2018. The Committee's investigation of the Prepetition Lenders' claims and security interests, and potential avoidance actions, is ongoing. However, the Committee has initially determined that Leaders may have been the recipient of unauthorized postpetition transfers totaling approximately $227,000 by virtue of sweeping the Debtor's postpetition collections to reduce Leaders' prepetition claim, as reflected in the Budget attached to the Interim DIP Order.

## **OBJECTIONS**

14. The overriding goal of any proposed asset sale under section 363 of the Bankruptcy Code is to maximize the proceeds received by a debtor's estate. *See Official Comm. of Unsecured Creditors of Cybergenics Corp., v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003). To accomplish that goal, bankruptcy courts are necessarily given discretion and latitude in conducting a sale. *See In re Wintz Co.*, 219 F.3d 807, 812 (8th Cir. 2000) (stating that in structuring a sale of assets, bankruptcy courts "have ample latitude to strike a satisfactory balance between the relevant factors of fairness, finality, integrity, and maximization of assets").

15. Here, the Court should deny approval of the proposed sale unless avoidance actions are expressly excluded from the "Purchased Assets" or additional fair consideration is paid and allocated to the bankruptcy estate for the benefit of unsecured creditors on account of such claims. In addition, the sale should not be approved unless there is adequate funding left with the bankruptcy estate following the sale to fully administer and conclude the chapter 11 case.

### A.  Avoidance Actions Should Be Excluded From the Sale.

16. The proposed sale should not include the transfer or sale of any avoidance actions because these claims belong to the bankruptcy estate and should be preserved for the benefit of all creditors. *See In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000) ("A paramount duty of a trustee or debtor in possession in a bankruptcy case is to act on behalf of the bankruptcy estate, that is, for the benefit of the creditors. To fulfill this duty, trustees and debtors in possession have a variety of statutorily created powers, known as avoidance powers, which enable them to recover property on behalf of the bankruptcy estate."); *In re Vogel Van & Storage, Inc.*, 210 B.R. 27, 32 (N.D.N.Y. 1997) *aff'd*, 142 F.3d 571 (2d Cir. 1998) (explaining

that it is a "well-settled principle that neither a trustee in bankruptcy, nor a debtor-in-possession, can assign, sell, or otherwise transfer the right to maintain a suit to avoid a preference.").

17. The Stalking Horse APA provides for the sale of all avoidance actions and does not indicate whether the buyer intends to waive or pursue such claims. While avoidance actions against the Debtor's trade creditors may be limited, considering that the Stalking Horse APA also provides for the assumption of liabilities owed to the Debtor's primary suppliers and vendors, the sale of avoidance actions against the Prepetition Lenders and the Debtor's insiders could potentially deprive the bankruptcy estate of significant value and perhaps the sole source of recovery for unsecured creditors. As noted above, the Debtor's Statement of Financial Affairs discloses at least $250,000 of potential insider avoidance actions. The Interim DIP Budget reflects approximately $227,000 of potentially avoidable unauthorized postpetition transfers to Leaders.

18. It appears that the Debtor (through McMurtry) is seeking to release valuable insider avoidance actions through the proposed sale for no consideration solely to relieve the insiders of liability. Where a proposed transaction would benefit an insider of a debtor, the court is required to give heightened scrutiny to the fairness of the value provided by the sale and the good faith of the parties executing the transaction." *In re Flour City Bagels, LLC*, 557 B.R. 53, 78 (Bankr. W.D.N.Y. 2016) (citing *In re Family Christian, LLC*, 533 B.R. 600, 622 (Bankr. W.D. Mich. 2015)). For example, in *Flour City Bagels*, the debtors attempted to sell their assets to an insider and, as part of the sale, agreed to release claims against officers, directors, employees and representatives. 557 B.R at 79. The court refused to allow the sale, in part because the releases "may convey away valuable [e]state assets with no business reason offered or any proof of value." *Id.*

6

19. The sale of these potential valuable avoidance claims for no consideration does not maximize value for the estate. The Committee has sought to preserve the estate's interest in avoidance actions in the Interim DIP Order by excluding the same from the Prepetition Lenders' replacement liens and by preserving challenge rights against the Prepetition Lenders. Such reservation of rights would be for naught should the Court permit the sale of avoidance actions. Accordingly, all avoidance actions should be excluded from the proposed sale, or to the extent that the sale includes avoidance actions (or some portion of them), a reasonable portion of the purchase price should be allocated to such claims and reserved for unsecured creditors. The Court should not approve the proposed sale without one of these alternatives in place.

**B.    The Sale Should Not Be Approved Without Sufficient Funding For Administrative Expenses Related to Confirmation of a Plan.**

20. As described more fully in the Committee's Objection to the Debtor's postpetition financing motion [Doc. 78-1], based on the Stalking Horse APA, the Debtor's current projections and the limited postpetition financing to be provided by Leaders, it is not clear whether sufficient funds will be available to fund administration of the Debtor's estate and a wind-down, including a plan of liquidation. The sale process must be structured in such a way to ensure that the estate will have sufficient cash to administer any remaining assets, pursue litigation claims (including potential avoidance actions, insider claims and any Prepetition Lender challenges), wind-down the Debtor's estate, reconcile disputed claims, and pay all administrative expense and priority claims in cash on the effective date of a plan.

21. First, it is well-settled that a plan cannot be confirmed unless all administrative expense claims are paid in full, in cash, on the plan's effective date. *See* 11 U.S.C. §1129(a)(9)(A); *In re Hechinger Inv. Co. of Del.*, 298 F.3d 219, 224 (3d Cir. 2002). The same is generally true for other priority claims under section 507(a). *See* 11 U.S.C. §1129(a)(9)(B); *In*

7

*re Armstrong World Indus., Inc.*, 348 B.R. 136, 166 (D. Del. 2006). Unless sufficient funds are set aside as part of the sale process, it is a near certainty that the Debtor will be unable to pay all of these claims or to confirm a plan after the sale closes. The inability to confirm a plan generally constitutes cause to dismiss a chapter 11 case. 11 U.S.C. § 1112(b).

22. A section 363 sale of substantially all of a debtor's assets in chapter 11 is appropriate only when it is a step to confirmation of a chapter 11 plan. *See In re Prime Succession, Inc., et al,* Case No. 03-25063-BKC-PGH (Bankr. S.D. Fla. 2003). In other words, the proceeds from the sale must be adequate to pay all administrative and priority claims in full, in cash, on the plan's effective date. *See* 11 U.S.C. § 1129(a)(9).

23. Courts have declined to allow section 363 sales of substantially all of a debtor's assets where such sales would leave the debtor's estate with such scant value as to frustrate reorganization. In *Braniff Airways, Inc.,* 700 F.2d 935, 940 (5th Cir. 1983), for example, the court reasoned, "were this transaction approved, and considering the properties proposed to be transferred, little would remain save fixed based equipment and little prospect or occasion for further reorganization." *See also In re Feinstein Family P'ship*, 247 B.R. 502 (Bankr. M.D. Fla. 2000) (denying trustee's motion to sell fully encumbered property to a credit bidder and holding that a trustee should not act as the lender's liquidating agent); *In re Family Christian, LLC et al.*, Case No. 15-00643 (JTG) (Bankr. W.D. Mich. Apr. 14, 2015) (the Court stated: "I think we'll have a problem at the sale hearing if the administrative expenses are not to be paid in connection with the sale.")[4]; Hr'g Tr. at 100:17-20, *In re NEC Holdings Corp., et al.,* Case No. 10-11890 (KG) (Bankr. D. Del. July 13, 2010) (secured creditors have "got to the pay the freight, and . . .

---

[4] A copy of the relevant pages of the transcript is annexed hereto as **Exhibit A**.

the freight is certainly an administratively solvent estate.")[5]; Hr'g Tr. at 23:25-24:9, *In re Townsends, Inc., et al.*, Case No. 10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011) (in response to the statement of debtors' counsel that section 503(b)(9) claims would not be paid in full, the Court stated: "Well, we've got a problem. Not going to run an administratively insolvent estate.")[6].

24. Accordingly, in order to allow a sale transaction outside of the plan process, the proposed purchase price and cash available post-closing must be an amount sufficient to pay all allowed administrative expense and priority claims in full on the effective date of the plan. Otherwise, the proposed sale should not be approved.

## RESERVATION OF RIGHTS

25. The Committee reserves the right to supplement this Limited Objection at any time prior to the Sale Hearing.

## CONCLUSION

26. For the foregoing reasons, the Committee respectfully requests that the Court deny the relief sought in the Motion or appropriately address the Committee's concerns as described herein.

---

[5] A copy of the relevant pages of the transcript is annexed hereto as **Exhibit B**.
[6] A copy of the relevant pages of the transcript is annexed hereto as **Exhibit C**.

|  |  |
|---|---|
| Dated: December 7, 2017 | Respectfully submitted, |
|  | OFFICIAL COMMITTEE OF UNSECURED CREDITORS |
|  | By:  /s/ *Gordon E. Gouveia* |
|  |       One of its attorneys |

Ira Bodenstein (#31268579)
Gordon E. Gouveia (#6282986)
Christina M. Sanfelippo (#6321440)
Shaw Fishman Glantz & Towbin LLC
321 N. Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151
*Counsel to the Official Committee of Unsecured Creditors*

10

{12353-001 OBJ A0492723.DOC 2}

**CERTIFICATE OF SERVICE**

Gordon E. Gouveia, the undersigned attorney, hereby certifies that on December 7, 2017, he caused the foregoing **OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED OBJECTION AND RESERVATION OF RIGHTS TO DEBTOR'S MOTION FOR APPROVAL OF SALE AND ENTRY OF SALE ORDER** to be served upon all parties requesting notice via the Court's CM/ECF noticing system and as otherwise indicated below.

/s/  Gordon E. Gouveia

# Mailing Information for Case 17-32273

### Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- David M Blaskovich    dave@lawdmb.com
- Ira Bodenstein    ibodenstein@shawfishman.com, cowens@shawfishman.com
- Timothy W Brink    tbrink@mpslaw.com, crampich@mpslaw.com
- Edmond M Burke    eburke@chuhak.com, mvasquez@chuhak.com
- Joseph D Frank    jfrank@fgllp.com, ccarpenter@fgllp.com; jkleinman@fgllp.com; mmatlock@fgllp.com
- Gordon E. Gouveia    ggouveia@shawfishman.com, kjanecki@shawfishman.com
- Jeremy C Kleinman    jkleinman@fgllp.com, ccarpenter@fgllp.com; mmatlock@fgllp.com
- Eugene S. Kraus    ekraus@skcounsel.com
- Jeffrey A Krol    jeffkrol@johnsonkrol.com, docket@johnsonkrol.com; Khuans@johnsonkrol.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Phillip A Martin    pmartin@fmhd.com
- Karen Newbury    knewbury@fgllp.com, mmatlock@fgllp.com;ccarpenter@fgllp.com
- Ha M Nguyen    ha.nguyen@usdoj.gov
- Louis J Phillips    lphillips@pfs-law.com, msiedlecki@pfs-law.com
- Richard A. Saldinger    rsaldinger@llflegal.com
- Christina Sanfelippo    csanfelippo@shawfishman.com, lleekaczmarek@shawfishman.com
- Nicole Stefanelli    nstefanelli@cullenanddykman.com
- Miriam R. Stein    mstein@chuhak.com, dgeorge@chuhak.com;vjefferson@chuhak.com
- Terence G Tiu    ttiu@chuhak.com, mdominguez@chuhak.com
- Sheryl Toby    stoby@dykema.com
- Michael Traison    mtraison@cullenanddykman.com

{12353-001 OBJ A0492723.DOC 2}

**VIA EMAIL AND U.S. MAIL**
S. Jason Teele, Esq.
Nicole Stefanelli, Esq.
Cullen and Dykman LLP
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
steele@cullenanddykman.com
nstefanelli@cullenanddykman.com

**VIA U.S. MAIL**
Maria A Boelen
Timothy Brink
Meltzer, Purtill & Stelle LLC
300 South Wacker Drive
Suite 2300
Chicago, IL 60606

**VIA U.S. MAIL**
Office of the United States Trustee
for the Northern District of Illinois
219 S. Dearborn Street
Room 873
Chicago, IL 60604
Attn: Ha Nguyen, Denise Delaurent

12

{12353-001 OBJ A0492723.DOC 2}