**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS (CHICAGO)**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| TEC-AIR, INC., | Case No. 17-32273 (JSB) |
| Debtor. | |

**FINAL ORDER (A) AUTHORIZING THE DEBTOR TO OBTAIN**
**POST-PETITION FINANCING, (B) AUTHORIZING THE USE OF CASH**
**COLLATERAL, (C) GRANTING ADEQUATE PROTECTION,**
**AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Tec-Air, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor"), pursuant to sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and Local Rule 4001-2 for entry of interim and final orders, *inter alia*:

(i)       authorizing the Debtor to obtain post-petition financing and incur debt (the "DIP Loan"), up to $600,000 of additional funding, pursuant to a post-petition credit agreement, substantially in the form attached to the Interim Order (defined below) as Exhibit 1 (together with all other agreements, documents, and instruments to be executed and/or delivered with, to, or in favor of Leaders, each as may be amended, modified, or supplemented and in effect from time to time, the "DIP Loan Agreement"),[1] by and between the Debtor, as borrower, and The Leaders Bank ("Leaders");

(ii)      authorizing the Debtor to use Cash Collateral (as defined below);

(iii)     granting adequate protection;

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the DIP Loan Agreement, as applicable.

(iv)    scheduling a final hearing to consider entry of a final order granting the

Motion; and

(v)    vacating and modifying the automatic stay imposed by section 362 of the

Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of

the DIP Loan Agreement and the Orders.

Due and appropriate notice of the Motion, the interim and final relief requested therein,

the Interim Order and the Final Hearing (as defined below) have been given in accordance with

Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Court having held an interim

hearing on the Motion on November 30, 2017 (the "Interim Hearing") and having entered the

*Interim Order (A) Authorizing the Debtor to Obtain Post-Petition Financing, (B) Authorizing the*

*Use of Cash Collateral, (C) Granting Adequate Protection, (D) Scheduling a Final Hearing and*

*(E) Granting Related Relief* on November 30, 2017 [Docket No. 95] (the "Interim Order"); and

the Debtor having filed notice of the proposed final order (this "Final Order" and together with

the Interim Order, the "Orders") on December 18, 2017; and the Court having held an final

hearing on the Motion on December 21, 2017 (the "Final Hearing" and together with the Interim

Hearing, the "Hearings"); and all objections, if any, to the relief requested in the Motion having

been withdrawn, resolved or overruled by the Court; and after due deliberation and

consideration, and for good and sufficient cause appearing therefor;

**THE DEBTOR HEREBY STIPULATES AND AGREES AS FOLLOWS**:

After consultation with its attorneys, and subject to and without prejudice to the rights of

the parties in interest as set forth in paragraph 15 herein, the Debtor stipulates, acknowledges and

agrees that (collectively, paragraphs (I) through (XI) below are referred to herein as the

"Debtor's Stipulations"):

-2-

35011.1 516181v3

(I)    As of the Petition Date (defined below), the Debtor is indebted to Leaders Bank in the amount of $5,463,793.53 (the "Leaders Prepetition Claim") pursuant to that certain Amended, Restated, and Consolidated Term Note dated May 28, 2015 and that certain Term Note dated April 26, 2016 (collectively, and together with all other agreements, documents, and instruments executed and/or delivered therewith, the "Leaders Notes") and that certain Forbearance Agreement dated April 26, 2016, as modified by that certain First Modification to Forbearance Agreement dated June 30, 2017;

(II)    To secure repayment of its obligations under the Leaders Notes, the Debtor granted Leaders a first-priority security interest in and liens on (collectively, the "Leaders Prepetition Liens") all of the Debtor's rights, title and interest in and to all of the following assets whether then existing or thereafter arising: all inventory, equipment, accounts (including but not limited to all health-care insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles), all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media, and all support obligations relating to the foregoing property, all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property, and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property (collectively, the "Leaders Prepetition Collateral");

-3-

(III)   The Debtor acknowledges and agrees that: (a) the Leaders Prepetition Liens constitute legal, valid, binding and non-avoidable obligations of the Debtor; and (b) the Leaders Prepetition Liens have first priority over any and all other liens, if any, on the Leaders Prepetition Collateral, subject only to the PMSI (defined below) and any liens otherwise permitted by the Leaders Notes (to the extent any such permitted liens are valid, binding, enforceable, property perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date) and otherwise have priority over any and all other liens on the Leaders Prepetition Collateral;

(IV)   As of the Petition Date, the Debtor is indebted to Byline Bank, as successor by merger to Ridgestone Bank ("Byline" and together with Leaders, the "Prepetition Lenders") in the amount of $2,250,281.48 pursuant to that certain Loan Agreement, that certain U.S. Small Business Administration Note and that certain U.S. Small Business Administration Security Agreement, each dated as of June 29, 2015 (collectively, the "SBA Loan Agreement" and together with the Leaders Notes, the "Prepetition Loans");

(V)   The Debtor's obligations under the SBA Loan Agreement, are secured by a purchase money security interest in favor of Byline (the "PMSI") in the following equipment: Chicago Electronic Robotics (laundry), Chicago Electronic Robotics (Zoneline), Nigata Molding Machine (385), Nigata Molding Machine (385), Nigata Molding machine (310), Nigata Molding Machine (310), 3 form machine, Matsui Press Side Grinders (10), IQMS Warehouse Management System (WMS), IT Infrastructure/Security (collectively, the "PMSI Collateral" and together with the Leaders Prepetition Collateral, the "Prepetition Collateral");

35011.1 516181v3

(VI)   The Debtor waives the right to challenge (a) the validity, extent, priority, or perfection of the Leaders Prepetition Liens and (b) the validity, allowability, priority, secured status or amount of the Leaders Prepetition Claim.

(VII)   The Debtor will continue to operate its business in the ordinary course consistent with the terms of the Budget (defined below) and shall provide authorized representatives of Leaders reasonable access to its books and records and other reporting functions;

(VIII)   <u>Adequate Protection as to Leaders</u>.

(a)   Leaders is entitled to and shall be granted replacement security interests and liens upon all assets of the Debtor, whether now existing or hereafter acquired and the proceeds and products thereof, excluding the PMSI Collateral, subject to the terms of Paragraph 4 of this Final Order.

(b)   Leaders is entitled to and shall receive a superpriority administrative expense claim pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, subject to the terms of Paragraph 5 of this Final Order.

(c)   Leaders is entitled to and shall receive adequate protection payments in the form of (a) monthly payments of interest, reasonable fees and other amounts due under the DIP Loan and (b) ongoing payment of Leaders' reasonable fees, costs and expenses, including, without limitation, legal and other professional fees and expenses.

(d)   In light of Leader's agreement to subordinate superpriority administrative expense claim and replacement liens to the Carve-Out, and the Budget covering all administrative costs projected by the Debtor, Leaders is entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" claims under section

552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar

doctrine.

(IX)    Adequate Protection as to Byline.   Byline is entitled to and shall be

granted replacement security interests and liens upon the PMSI Collateral solely to the extent of

any diminution in the value of the PMSI Collateral from and after the Petition Date.

(X)    Extension of Financing.   Leaders has indicated a willingness to provide

financing to the Debtor in accordance with the DIP Loan Agreement, subject to (i) the entry of

the Orders, and (ii) findings by the Court that such financing is essential to the Debtor's estate,

that Leaders is a good faith financier, and that the liens and other protections granted to Leaders

pursuant to the Orders and the DIP Loan will not be affected by any subsequent reversal or

modification of this Final Order unless the Final Order was stayed pending appeal, as provided in

section 364(e) of the Bankruptcy Code.

(XI)    Business Judgment and Good Faith Pursuant to Section 364(e).   The terms

and conditions of the DIP Loan and the DIP Loan Agreement are fair, reasonable, and the best

available under the circumstances, reflect the Debtor's exercise of prudent business judgment

consistent with its fiduciary duties, and are supported by reasonably equivalent value and

consideration.   The DIP Loan was negotiated in good faith and at arms' length between the

Debtor and Leaders.   The proceeds to be extended under the DIP Loan will be so extended in

good faith, and for valid business purposes and uses, as a consequence of which Leaders is

entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

35011.1 516181v3

**THE COURT HEREBY FINDS AND CONCLUDES THAT**:[2]

A.    Petition Date.  On October 27, 2017 (the "Petition Date"), the Debtor filed a

voluntary petition under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in the

United States Bankruptcy Court for the Northern District of Illinois (the "Court").

B.    Debtor-in-Possession.  The Debtor continues to operate and manage its business

as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No

trustee or examiner has been appointed in the Chapter 11 Case.

C.    Jurisdiction and Venue.  The Court has jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. §

157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    Statutory Committee.  On November 6, 2017, the Office of the United States

Trustee for the Northern District of Illinois (the "U.S. Trustee") appointed an official committee

of unsecured creditors (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code.

E.    Notice.  The Hearings were held pursuant to Bankruptcy Rule 4001 and Local

Rule 4001-2. Notice of the Interim Hearing and the relief requested in the Motion was provided

by overnight mail on November 21, 2017 to: (a) the U.S. Trustee; (b) counsel to the Committee;

(c) counsel to the Prepetition Lenders; and (d) all parties that have filed a request for notice

pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  Notice of the Interim

Order and the Final Hearing was provided by first class mail on December 1, 2017 to the Notice

Parties.  Under the circumstances, such notice of the Hearings and the relief requested in the

---

[2]    The findings and conclusions set forth herein constitute the Court's findings of fact and
conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding
pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact
constitute conclusions of law, they are adopted as such.  To the extent any of the following
conclusions of law constitute findings of fact, they are adopted as such.

35011.1 516181v3

Motion is sufficient and complies with sections 102(1) and 364(d) of the Bankruptcy Code,

Bankruptcy Rules 2002, 4001(b), 4001(c), 4001(d), and the Local Rules.

      F.    <u>Findings Regarding the Post-Petition Financing</u>.

      (i)    *Need for Post-Petition Financing and Use of Cash Collateral*. The ability

of the Debtor to finance its operations requires immediate access to cash derived from operating

the businesses claimed as collateral by the Prepetition Lenders (as such term is defined in section

363(a) of the Bankruptcy Code, the "<u>Cash Collateral</u>"), the absence of which would immediately

and irreparably harm the Debtor, its estate, and its creditors. The Cash Collateral constitutes

property of the Debtor's estate. In addition to the use of Cash Collateral, the Debtor requires the

additional funds being provided through the DIP Loan in order to continue the operation of its

business and administer and preserve the value of the estate for the benefit of creditors. If the

Debtor is not able to use Cash Collateral and the proceeds of the DIP Loan as provided herein it

will be unable to fund payroll and other operating expenses that are necessary to maintain the

value of the Debtor's estate and to enable the Debtor to maximize recoveries for all parties in

interest.

      (ii)    *No Credit Available on More Favorable Terms*. Given its current

financial condition and financing arrangements, and the length of the term of the DIP Loan, the

Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy

Code. The Debtor also has been unable to obtain secured credit from other sources: (a) having

priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and

507(b) of the Bankruptcy Code; (b) secured only by a lien on property of the Debtor and its

estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of

the Debtor and its estate that is subject to a lien. Further, Leaders has not consented to the

35011.1 516181v3

priming of the Leaders Prepetition Liens by any other lenders (except to the extent provided herein and under the DIP Loan Agreement). Financing on a post-petition basis is not otherwise available without granting to Leaders the protections, rights, and remedies set forth in the DIP Loan Agreement and this Final Order.

(iii)    *Use of Proceeds of the DIP Loan.*  Proceeds of the DIP Loan shall be used in a manner consistent with the terms and conditions of the DIP Loan Agreement and in compliance with the Budget and limitations set forth in this Final Order, solely for working capital and for restructuring costs and expenses, including the Carve-Out (defined below), and adequate protection payments to Leaders.

G.    <u>Relief Essential; Best Interest; Good Cause</u>.  The relief requested in the Motion is necessary, essential, and appropriate for continued operations, and for the management, maintenance, and preservation, of the Debtor's assets.  It is in the best interest of the Debtor's estate for the Debtor to be allowed to use Cash Collateral and obtain financing pursuant to this Final Order.  Good cause has been shown for the relief requested in the Motion and as granted in this Final Order.

Based upon the foregoing findings and conclusions, and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.    <u>Motion Granted</u>.  The Motion is hereby granted in accordance with the terms and conditions set forth in this Final Order.

2.    <u>Authorization to Use of Cash Collateral</u>.  The Debtor is hereby authorized to use the Prepetition Lenders' Cash Collateral to pay the ordinary and reasonable expenses of

35011.1 516181v3

operating its business in accordance the terms of this Final Order and the budget attached hereto as <u>Exhibit A</u> (the "<u>Budget</u>").

   3.   <u>DIP Loan Authorization</u>.

      (a)   *Approval of Entry into DIP Loan Agreement*.  The Debtor is expressly and immediately authorized, empowered, and directed to execute and deliver the DIP Loan Agreement and to incur and to perform the DIP Loan in accordance with, and subject to, the terms of this Final Order and the DIP Loan Agreement, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Loan and the creation and perfection of Leader's liens described in and provided for by this Final Order and the DIP Loan Agreement.  The Debtor is hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Loan Agreement, which acts and payments shall not be subject to or require further approval of the Court.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be applied as required by this Final Order and DIP Loan Agreement.  Upon execution and delivery, the DIP Loan Agreement shall represent valid and binding obligations of the Debtor enforceable against the Debtor in accordance with their terms.

      (b)   *Authorization to Borrow*.  Subject to the terms, conditions, limitations on availability, and reserves set forth in the DIP Loan Agreement and this Final Order, upon the execution of the DIP Loan Agreement, and in accordance with the Budget, the Debtor is hereby authorized to borrow under the DIP Loan up to the aggregate amount of $600,000.00.

      (c)   *Use of DIP Loan Proceeds*.  The Debtor is authorized to use the DIP Loan only for the purposes specifically set forth in this Final Order, the DIP Loan Agreement

35011.1 516181v3

and in compliance with the Budget, including, subject to the Carve-Out, (i) to pay fees, costs and expenses incurred in connection with the transactions contemplated by the DIP Loan Agreement; (ii) to pay other administration costs incurred in connection with the Chapter 11 Case consistent with the Budget; and (iii) to pay for other working capital and general corporate purposes.

(d)     *Maturity of DIP Loan.*  The DIP Loan shall mature and become due and payable (the "Maturity Date") on the occurrence and continuation of an uncured Event of Default (as set forth in Section 7.01 of the DIP Loan Agreement and in paragraph 14 below), or January 26, 2018, unless extended with the consent of Leaders.

4.     Replacement Liens.

(a)     Subject to the Challenge Period (defined below) and the Carve-Out, as adequate protection for the DIP Loan and the use of its Cash Collateral, Leaders shall be and hereby is granted a replacement security interest and lien (the "Leaders Replacement Lien") upon all assets of the Debtor, whether now existing or hereafter acquired and the proceeds and products thereof, excluding the PMSI Collateral (collectively, the "Post-Petition Collateral").

(b)     Subject to the Challenge Period and the Carve-Out, as adequate protection for the use of its Cash Collateral, Byline shall be and hereby is granted replacement security interests and liens upon the PMSI Collateral, to the extent of any diminution in the value of the PMSI Collateral from and after the Petition Date (the "Byline Replacement Lien" and collectively with the Leaders Bank Replacement Lien, the "Replacement Liens").

(c)     The Replacement Liens shall exclude avoidance actions of the Debtor's estate arising under chapter 5 of the Bankruptcy Code and all proceeds thereof and commercial tort claims.  Nothing herein shall be deemed to alter or affect any valid, prepetition security interests in or liens on the Debtor's assets held by any secured creditor other than the Prepetition

-11-

Lenders. For the avoidance of doubt, the Replacement Liens shall have same priority as existed prior to the Petition Date.

5.     Superpriority Claim as to Leaders.     Subject to the Challenge Period and the Carve-Out, Leaders is hereby granted an allowed superpriority administrative expense claim in this Chapter 11 Case with respect to postpetition advances by Leaders to the Debtor under the DIP Loan Agreement, as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code (the "Superpriority Claim"). The Superpriority Claim shall exclude avoidance actions of the Debtor's estate arising under chapter 5 of the Bankruptcy Code and all proceeds thereof, and shall not prime, alter or affect the priority of any valid, prepetition security interests in or liens on the Debtor's assets held by any secured creditor that were, as of the Petition Date, senior in priority to the Leaders Prepetition Liens.

6.     Adequate Protection Payments to Leaders.     The Debtor shall pay to Leaders (a) monthly payments of interest, reasonable fees and other amounts due under the DIP Loan, and (b) Leaders' reasonable fees, costs and expenses, including, without limitation, legal and other professional fees and expenses.

7.     Carve-Out.     As used in this Final Order and the DIP Loan Agreement, the term "Carve-Out" shall mean the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C § 1930(a); (ii) fees and expense of up to $10,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) allowed and unpaid claims for unpaid fees, costs, and expenses of professionals retained by the Debtor, in an amount not to exceed $250,000 as set forth in the Budget, and allowed and unpaid claims for unpaid fees, costs, and expenses of professionals retained by the Committee, in an amount not to exceed $100,000

as set forth in the Budget. The Carve-Out shall not be a cap on the allowed fees and expenses of professionals retained by the Debtor and/or the Committee.

8.      Perfection of Replacement Liens. The Replacement Liens (a) are and shall be in addition to the Prepetition Liens; (b) are and shall be deemed properly perfected, valid and enforceable liens without any further action by the Debtor, Leaders or Byline and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents and instruments; and (c) shall remain in full force and effect notwithstanding any subsequent conversion to chapter 7 or dismissal of the Chapter 11 Case. Although not required, upon request by the Prepetition Lenders, the Debtor shall execute and deliver any and all UCC Financing Statements, UCC Continuation Statements, or other instruments or documents considered by the Prepetition Lenders to be reasonably necessary in order to perfect the Replacement Liens and proceeds granted by this Final Order, and the Prepetition Lenders are authorized to receive, file and record the foregoing at its own expense, which actions shall not be deemed a violation of the automatic stay embodied in section 362 of the Bankruptcy Code. The Prepetition Lenders, in their discretion, may file a photocopy of this Final Order as a financing statement or other evidence of the perfection of their respective Replacement Liens, with any recording officer designated to file financing statements or with any registry of deeds, and in such event, the recording officer shall be authorized to file or record such copy of this Final Order.

9.      Additional Covenants and DIP Protections: Without in any manner limiting the terms of the DIP Loan Agreement or this Final Order:

          (a)      upon reasonable notice, the Debtor shall provide Leaders and its respective representatives with access to the Debtor's premises, personnel (including, but not

limited to, senior management and any chief restructuring officer or similar person or firm employed by the Debtor in this Chapter 11 Case), advisors, books and records and the Post-Petition Collateral, and the Debtor shall cooperate fully in all requests for information and data made by Leaders;

(b)     the Debtor shall promptly (and in any event within one (1) business day after its receipt thereof) provide to Leaders copies of any correspondence, demands, notices, complaints, or process sent to the Debtor by any Federal or State governmental agency;

(c)     the Debtor shall not propose, file, support, or pursue confirmation of a Chapter 11 plan unless such plan provides for the payment in full in cash of all obligations owed to Leaders and is approved by Leaders.

10.     Post-Petition Collateral Rights.  Unless Leaders has provided its prior written consent or all the DIP Loan has been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), and all commitments to lend have terminated, there shall not be entered in this Chapter 11 Case, or in any subsequent chapter 7 case, any order which authorizes any of the following:

(a)     the obtaining of credit or the incurring of indebtedness, pursuant to sections 364(c) or 364(d) of the Bankruptcy Code, that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Post-Petition Collateral which is equal or senior to those granted to Leaders; or

(b)     absent approval of the Court on notice to Leaders, relief from stay by any person holding or asserting liens junior to the liens of Leaders on all or any portion of the Post-Petition Collateral.

-14-

11.     <u>Disposition of Post-Petition Collateral</u>.  The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Post-Petition Collateral, without the prior written consent of Leaders (and no such consent shall be implied, from any other action, inaction or acquiescence by Leaders or an order of the Court), except: (i) in connection with the proposed Sale, (ii) as otherwise provided for in the DIP Loan Agreement and this Final Order, or (iii) as otherwise approved by the Court and consented to by Leaders.

12.     <u>Waivers</u>.

(a)     No costs or expenses of administration which have been or may be incurred in this Chapter 11 Case at any time shall be charged against the Prepetition Lenders pursuant to sections 105 or 506(c) of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the Prepetition Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

(b)     The Debtor hereby waives (i) any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (ii) the equitable doctrine of "marshaling" or any similar doctrine.

13.     <u>Rights and Remedies Upon Maturity of DIP Loan</u>.   Immediately upon the Maturity Date, Leaders may declare (i) all amounts due and owing under the DIP Loan Agreement to be immediately due and payable, (ii) the termination of any further commitment to extend credit to the Debtor, and/or (iii) the termination of any future liability or obligation of Leaders under the Leaders Notes, but without affecting any of the Leaders Prepetition Liens or the remedies provided thereunder (any such declaration by Leaders shall be referred to herein as a "<u>Termination Declaration</u>").  The Termination Declaration shall be given by email (or other

-15-

electronic means) to counsel to the Debtor, counsel to Leaders, counsel to the Committee, and

the U.S. Trustee (the date any such Termination Declaration is made shall be referred to herein

as the "Termination Declaration Date"); provided, however, that Leaders will fund the Carve-

Out and all amounts set forth in the Budget notwithstanding termination of the DIP Loan.

14.     Events of Default.  The occurrence of any one or more of the Events of Default

set forth in Section 7.01 of the DIP Loan Agreement shall constitute an event of default under

this Final Order, unless expressly waived in writing by Leaders.

15.     Challenge Rights.  The stipulations and admissions contained in this Final Order,

including the Debtor's Stipulations, shall be binding on the Debtor in all circumstances.  The

Debtor's Stipulations shall be binding on the Debtor's estate and every party in interest,

including, without limitation, the Committee, unless, and solely to the extent that (a) any such

party in interest, including the Committee, with standing and requisite authority, has timely

commenced an adversary proceeding (subject to the limitations set forth below) against the

Prepetition Lenders (i) in connection with any matter related to the Prepetition Loans or the

Prepetition Collateral (a "Challenge Proceeding") by no later than 75 days after the entry of the

*Interim Order (A) Authorizing the Debtor to Use Cash Collateral (B) Granting Adequate*

*Protection, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* [Docket No. 34]

(i.e., November 2, 2017) (the "Challenge Period") or (ii) any other claims or causes of action

against the Prepetition Lenders.  The Challenge Period may only be extended with the written

consent of the Prepetition Lenders or by the order of the Court.  If a Challenge Proceeding is

timely commenced, the admissions and stipulations contained in this Final Order, including the

Debtor's Stipulations, shall nonetheless remain binding and preclusive (as provided in this

paragraph) on the Debtor, the Committee, and any other person or entity, except as to any such

-16-

findings and admissions that were expressly and successfully challenged (pursuant to a final order) in such Challenge Proceeding.  Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtor or its estate, including, without limitation, claims and defenses with respect to the Prepetition Loans or the Prepetition Collateral.  For the avoidance of doubt, any trustee appointed or elected in this Chapter 11 Case shall, until the expiration of the Challenge Period and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by acknowledgements, admissions, confirmations, stipulations and waivers of the Debtor in this Final Order.

　　　　16.　　　Other Rights and Obligations.

　　　　(a)　　　*Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of Final Order.*  Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, with respect to amounts advanced pursuant to this Final Order, in the event any or all of the provisions of this Final Order are hereafter reversed or modified by a subsequent order of this or any other Court, Leaders is entitled to the protections provided in section 364(e) of the Bankruptcy Code and, provided that the Final Order is not stayed pending appeal, no such reversal or modification shall affect the validity and enforceability of any advances made under the DIP Loan or the liens or priority authorized or created hereby.  Notwithstanding any such reversal or modification, any claim granted to Leaders hereunder arising prior to the effective date of such reversal or modification

of any protections granted to Leaders shall be governed in all respects by the original provisions

of this Final Order, and Leaders shall be entitled to all of the rights, remedies, privileges and

benefits, including protections granted herein, with respect to any such claim, provided that the

Final Order was not stayed at the time the claim arose.  Since the loans made pursuant to the DIP

Loan Agreement are made in reliance on this Final Order, the obligations owed Leaders prior to

the effective date of any reversal or modification of this Final Order cannot, as a result of any

subsequent order in this Chapter 11 Case or any subsequent chapter 7 case, be subordinated, lose

their lien priority, or be deprived of the benefit of the status of the liens and claims granted to

Leaders under this Final Order and/or the DIP Loan Agreement, provided that the Final Order

was not stayed.

(b)    *Binding Effect.*  All of the provisions of this Final Order shall be binding

upon the Debtor, the Committee, all other creditors of the Debtor, and all other parties in interest,

and their respective successors and assigns (including any trustee or other fiduciary hereinafter

appointed as a legal representative of the Debtor or with respect to the property of the estate of

the Debtor) whether in this Chapter 11 Case or any subsequent chapter 7 case, or upon dismissal

of the Chapter 11 Case or any chapter 7 case, except as otherwise provided herein.

(c)    *No Waiver.*  The failure of Leaders to seek relief or otherwise exercise its

rights and remedies, as applicable, under the DIP Loan Agreement, this Final Order or otherwise,

shall not constitute a waiver of any of such party's rights hereunder, thereunder, or otherwise.

Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does

not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of Leaders

under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights

of Leaders to (i) request conversion of the Chapter 11 Case to a case under chapter 7 of the

Bankruptcy Code, dismissal of the Chapter 11 Case, or the appointment of a trustee in the Chapter 11 Case, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code and this Final Order, a plan of reorganization, or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable or otherwise) Leaders may have pursuant to this Order, the DIP Loan Agreement, or applicable law.

(d)     *No Third Party Rights*.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, landlord, lessor, equity holder, or any direct, indirect, or incidental beneficiary.

(e)     *Amendment of DIP Loan Agreement*.  The Debtor and Leaders may amend or waive any provision of the DIP Loan Agreement on notice to the U.S. Trustee, counsel to the Committee and counsel to Byline provided that such amendment or waiver, in the reasonable judgment of the Debtor and Leaders, is not material.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of the DIP Loan Agreement shall be effective unless set forth in writing, signed by the Debtor and Leaders.

17.     <u>Limitation of Liability</u>.  In determining to provide the DIP Loan or enforcing the rights and remedies afforded to such parties under this Final Order and/or the DIP Loan Agreement, Leaders shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§9601 *et seq.* as amended , or any similar federal statute).  Furthermore, nothing in this Final Order or in the DIP Loan Agreement shall in any way be construed or interpreted to impose or allow the

imposition upon Leaders any liability for any claims arising from the prepetition or post-petition activities of the Debtor.

18.   Survival of Final Order.   Except as otherwise provided herein, all of the provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Chapter 11 plan in the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing the Chapter 11 Case, (iv) withdrawing of the reference of the Chapter 11 Case from the Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in the Court.  The terms and provisions of this Final Order, including the protections granted to Leaders pursuant to this Final Order and the DIP Loan Agreement, shall continue in full force and effect notwithstanding the entry of such order, and protections for other parties shall maintain their priority as provided by this Final Order until all the obligations of the Debtor to Leaders pursuant to the DIP Loan Agreement and this Final Order have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Loan which survive such discharge by their terms).

19.   Inconsistency.   In the event of any inconsistency between the terms and conditions of the DIP Loan Agreement and of this Final Order, the provisions of this Final Order shall govern and control.

20.   Effectiveness.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Final Order.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 7062 or any other Bankruptcy Rule, or Rule 62(a) of the

35011.1 516181v3

Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

21.    No Waivers or Modification of Final Order. The Debtor irrevocably waives any right to seek any modification or extension of this Final Order without the prior written consent of Leaders and no such consent shall be implied by any other action, inaction or acquiescence of Leaders.

22.    Headings. All paragraph headings used in this Final Order are for ease of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

23.    Retention of Jurisdiction. The Court has and will retain jurisdiction (i) to enforce this Final Order and (ii) over any proceedings commenced by Leaders following an Event of Default under the DIP Loan Agreement to the extent necessary to allow the Leaders to obtain repayment of the DIP Loan.

Dated:  December 21 , 2017
       Chicago, Illinois

                             THE HONORABLE JANET S. BAER
                             UNITED STATES BANKRUPTCY JUDGE

35011.1 516181v3

## Exhibit A

**Budget**

TEC-Air
Weekly Cash Flow

| | actual 10/23-10/29 Week 1 | actual 11/6-11/10 Week 2 | actual 11/13-11/17 Week 3 | actual 11/20-11/24 Week 4 | actual 11/27-12/1 Week 5 | actual 12/4-12/8 Week 6 | actual 12/11-12/15 Week 7 | projected 12/18-12/22 Week 8 | projected 12/25-12/29 Week 9 | projected 1/1-1/5/18 Week 10 | projected 1/8-1/12 Week 11 | projected 1/15-1/19 Week 12 | projected 1/22-1/26 Week 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** (Subject to +/- 10% Variant) | | | | | | | | | | | | | |
| Beginning Book Balance | (108,260) | (226,674) | 164,035 | 457,575 | 277,030 | 153,729 | 388,995 | 288,881 | 92,866 | 179,388 | 577,763 | 427,602 | 175,623 |
| Sales | 85,834 | 565,849 | 457,919 | 114,159 | 53,750 | 370,641 | 582,837 | 175,000 | 50,000 | 375,000 | 500,000 | 100,000 | 100,000 |
| DIP Financing | $0 | | | | | | | | 600,000 | | | | |
| **TOTAL RECEIPTS** | (22,426) | 339,175 | 603,953 | 571,734 | 330,779 | 474,340 | 471,832 | 463,881 | 742,866 | 554,388 | 577,763 | 527,602 | 375,623 |
| **OPERATING DISBURSEMENTS** Classification | | | | | | | | | | | | | |
| Credit Card Charges | 11,550 | $0 | $0 | 8,140 | $0 | $0 | 53,000 | 57,140 | $0 | $0 | 8,140 | 8,140 | $0 |
| Payroll and Related | 58,730 | 85,102 | 38,780 | 80,213 | 34,489 | 83,463 | 36,113 | 88,645 | 36,000 | 85,000 | 36,000 | 89,845 | 36,000 |
| Equipment/IT | 1,369 | $0 | $0 | 1,369 | $0 | 55,175 | 51,369 | 51,369 | $0 | $0 | $0 | 56,544 | $0 |
| Insurance | 30,856 | $0 | $0 | 57,806 | $0 | 57,746 | 31,337 | 43,806 | 125,000 | $0 | $0 | 57,669 | $0 |
| Rent | $0 | $0 | 43,843 | $0 | $0 | 43,843 | $0 | $0 | $0 | $0 | $0 | 43,843 | $0 |
| Utilities | 7,936 | $0 | $0 | 58,500 | $0 | $0 | 57,939 | 5,550 | 545,744 | $0 | $0 | 528,590 | $0 |
| Vendors | 133,797 | 90,038 | 61,756 | 153,586 | 142,561 | 60,356 | 57,939 | 252,004 | 160,734 | 91,625 | 114,761 | 133,447 | $0 |
| **TOTAL OPERATING DISBURSEMENTS** | 294,249 | 175,140 | 144,378 | 268,705 | 177,050 | 264,583 | 182,951 | 562,515 | 371,478 | 176,625 | 150,761 | 337,279 | 36,000 |
| **RESTRUCTURING** | | | | | | | | | | | | | |
| Lenders Bank - Adequate Protection | | | | 76,600.00 | | 70,762 | | | 54,000 | | | | 24,000.00 |
| DIP Loan - Interest | | | | | | | | | 513,000 | | | 5,600.00 | 175,000 |
| Bankruptcy Counsel (Cullen & Dykman)* | | | | | | | | | 125,000 | | | | 10,400 |
| US Trustee Fee | | | | | | | | | 50,000 | | | | 50,000 |
| Committee Conctpl (Shaw Fishman)* | | | | | | | | 8,500.00 | | | 8,500.00 | | |
| Ordinary Course Professionals | | | | | | | | | | | | | |
| **TOTAL RESTRUCTURING** | $0 | $0 | $0 | 76,600 | $0 | 70,762 | $0 | 8,500 | 192,000 | 50 | 8,500 | 13,500 | 209,400 |
| **TOTAL RESTRUCTURING EXPENSES** | 294,249 | 175,140 | 144,378 | 294,705 | 177,050 | 285,345 | 182,951 | 571,015 | 563,478 | 176,625 | 351,379 | 351,379 | 245,400 |
| **ENDING CASH** | (226,674) | 164,035 | 457,575 | 277,030 | 155,729 | 388,995 | 288,881 | 92,866 | 179,388 | 577,763 | 427,002 | 175,623 | 30,223 |

* Fees are accrued until closing of sale transaction.